*664 OPINION OF THE COURT
Edward J. Greenfield, J.
Petitioner, West 105th Street Homesteaders Housing Development Fund Corporation (Homesteaders), moves to vacate and set aside, nunc pro tunc, the prior order of this court (Stecher, J.), entered on default and dated May 14, 1981. This motion is joined in by petitioner, City of New York (City).
Previously, the Homesteaders moved to intervene in the proceeding brought by the City to vacate the prior order on the grounds that their prior order was fraudulently and was improperly-obtained. The Homesteaders’ motion was granted without opposition by order of this court dated March 18, 1982. However, the City’s motion was denied without prejudice to renew upon the lifting of the stay imposed in a bankruptcy action involving these properties pending before bankruptcy Judge Edward J. Ryan.
On May 4, 1982, Judge Henry F. Werker of the United States District Court for the Southern District of New York, vacated all prior stays and directed that the issue of the title to the properties which are the subject of this suit be referred to this court.
On May 13, 1982, the return date of the order to show cause in this renewal motion, the petitioners withdrew their previous ground for vacating the May 14, 1981 order (e.g., for fraud) and instead asserted that even if the City had defaulted, its default should be vacated for excusable neglect or in the interests of justice.
This case involves title to 16 parcels of real property in and around West 105th Street, New York, New York.
In July, 1977, the City commenced this in rem tax foreclosure action by allegedly sending the notice of the foreclosure to the owners at addresses required to be kept on file on “owner’s registration” cards at the office of the city collector. (See Administrative Code of City of New York, § D17-1.0 et seq.)
The owners interposed no answer in opposition and on May 25,1978, the City acquired title to the parcels by deed recorded on that date (Administrative Code, § D17-12.0). At the time the in rem action was commenced, taxes and *665 interest on these properties were owing from two to five years. While the papers submitted upon the motion do not reflect the status of the arrears on March 25, 1978, the papers do reveal that by October 20, 1981, the total tax indebtedness with interest was nearly $1,300,000. In addition, it is stated that the City spent over $600,000 in repairs, services and maintenance charges during the period following March 25, 1978.
The May 14,1981 order of Mr. Justice Stecher, granted without opposition, vacated and set aside the judgment of foreclosure entered on May 25, 1978 and directed vacatur of the City’s deed recorded in the City Registrar’s office and further directed that the City release its interest in those properties to respondent Raleigh Davenport as owner of the parcels or as president of the owner corporations (collectively, the Owners).
The City, by the Assistant Corporation Counsel, Hyman Weber, who is in charge of the Law Department’s in rem section, alleges that the entry of this order without opposition by the City occurred under the most bizarre and inexplicable facts and circumstances.
Mr. Weber asserts that as chief of the in rem section, he automatically receives all motions against the City in in rem actions so that he may assign the motion to one of the attorneys under his supervision. Weber also asserts that as chief of the in rem section, he has become well known to the clerks in Special Term, Part II, and, in consequence, is generally notified when an order to show cause is presented in an in rem case which contains a stay so that he can be present to argue against signing the order containing a stay.
In this case, however, the order to show cause was apparently brought in to the court after 5:00 p.m. on Friday, May 8,1981. Since the Special Term, Part II, office was closed, respondent, Raleigh Davenport, brought the papers directly to chambers where they were signed without any prior notification to Weber. The order required service on or before Monday, May 11, 1981, and was made returnable on Thursday, May 14, 1981.
Davenport’s motion papers, in a single legal back, consisted of the order to show cause followed by a proposed *666 vacate order followed by his undated affirmation. Upon the return date, Davenport submitted the papers showing the receipt stamp on the back of the last page of the order to show cause and on the face of the proposed vacate order. The stamp ostensibly showed delivery on the office of the Corporation Counsel on May 11, 1981 at 12:05 p.m.
Mr. Weber asserts that he never received the papers and alleges that Mr. Davenport obtained the Corporation Counsel stamp by trick or guile, or may have inadvertently removed the papers after they had been served and stamped. In support of this unusual allegation, Weber relates how Davenport previously manipulated a well-meaning City employee into notarizing his signature on forms for mandatory release of property acquired in tax foreclosure to a former owner.*
On September 25, 1978, the last day on which a mandatory release application could be filed (a discretionary release may be sought at any time within two years after the City acquires title, but requires the consent of the board of estimate prior to release), Mr. Davenport appeared at the release center of the Division of Real Property, where such applications are filed, with 17 handwritten applications. Since he lacked the lot and block designations on each application and the $100 filing fee for each application, the applications were not accepted. The well-meaning City employee notarized Mr. Davenport’s signature upon the promise by Davenport that he would return with the missing lot and block designations, title searches and filing fees. Mr. Davenport never returned, however, he thereafter held out as proof that he had, in fact, filed within the mandatory period the 17 applications showing the notary stamp on the proper date..
The motion to vacate was submitted to Special Term on May 14,1981 and as previously noted was granted without *667 opposition the same day. The proposed order, with certain modifications, was signed and entered on May 19,1981. On May 19, 1981, Davenport allegedly served a certified copy of the order of vacatur on the Corporation Counsel. However, Weber insists that that correspondence was also not received.
Mr. Weber, who prides himself on running an efficient operation within the office of the Corporation Counsel, concedes that it is possible that a set of papers might be lost or mislaid, but emphatically denies that two separate communications on the same matter would be lost within a 10-day period. The cover letter accompanying the certified order commences with the phrase, “As requested by your office.” One wonders why such a phrase was included since if no one from the Law Department appeared in Special I on the return date of the motion, who would have requested the copy of the order. Mr. Davenport’s papers shed no light on this.
Among the modifications to the proposed vacate order was a direction that the Department of Real Estate account to the owner of the property for all rents and other moneys received from the property by the City of New York within 30 days after service of a copy of the order with notice of entry. Although Davenport asserts that he served the order on the Law Department on May 19,1981, he took no action to compel the accounting directed by the court.
However, on July 2, 1981, Davenport commenced suit against tenants in the various properties and banking institutions to recover rents allegedly withheld. Seeking immediate turnover of the money Davenport moved by order to show cause for that relief. On July 21, 1981, Mr. Justice Sidney H. Asch of this court denied the motion on the ground that “plaintiffs have not demonstrated their entitlement to the relief requested by clear and convincing evidence”. Justice Asch concluded that the issue of whether the plaintiff (Davenport), or the City was the owner of the properties prevented the granting of the relief requested. It is strange, indeed, that 44 days after the order restoring Davenport to ownership of the properties, when the motion against the tenants was brought or 15 days later (July 17,1981) when Davenport submitted an affida *668 vit in reply that Davenport did not submit a copy of the vacate order dated May 19, 1981.
It can only be assumed that Davenport, for reasons best known to himself, believed that it was better to risk loss on the tenant motion of July 2, 1981, than to risk exposure of the vacate order of May 19, 1981. Perhaps a reason for keeping the vacate order secret was to prevent the City from seeking to vacate its default and oppose the vacate motion of May 14, 1981 as it seeks to do here. On August 21,1981, the Owners filed for bankruptcy under chapter 11 of the Bankruptcy Act (US Code, tit 11, ch 11).
On October 7, 1981, the City contends that it first discovered the existence of the May 14, 1981 order and approximately three weeks later moved to vacate it. However, prior to learning of the order here in issue, the City agreed to sell seven of the parcels to the Homesteaders. It is asserted that since April 11, 1981, the City and the Homesteaders have undertaken extensive efforts and expended substantial moneys to prepare the parcels for transfer to the Homesteaders. These efforts include allegedly thousands of man hours of “sweat equity” expended by the Homesteaders in reconstructing the premises. In addition, after public hearings, the New York City Planning Commission adopted a report dated July 2,1981 approving the plan for transfer of the properties to the Homesteaders and on September 1,1981 after additional public hearings, the board of estimate adopted a resolution approving the transfer of the parcels to the Homesteaders.
It is against this backdrop that the City and the Homesteaders seek to vacate the City’s prior default. A party (the City) or an interested nonparty (the Homesteaders) may move to vacate a default upon the ground of excusable default if such motion is made within one year after entry of the order.
It is clear that this motion, made within one year after the entry of the judgment, is timely made. It is the policy of the courts of this State to construe the provisions of CPLR 5015 (subd [a], par 1) liberally so as to permit the disposition of the case on the merits (Fusco v Malcolm, 50 AD2d 685; 5 Weinstein-Korn-Miller, par 5015.02). Assuming the least favorable interpretation of the facts, the City’s de *669 fault was a law office failure. However, the length of time within which the City had to respond was only three days. It moved expeditiously to vacate its default after learning of it and no undue prejudice resulted to the Owners. Even where a default has been occasioned by a law office failure, our courts have been willing to vacate it (see D’Amico v Flushing Hosp. & Med. Center, NYLJ, Aug. 7,1981, p 7, col 5, affd 88 AD2d 1114; Hensey Props, v Lamagna, 23 AD2d 742). Law office failure does not ipso facto prevent the court from exercising its broad discretionary power to relieve a party from a default. The court may exercise its discretion by “a balanced consideration of all relevant factors, including the merit or lack of merit in the action, seriousness of the injury, extent of the delay, excuse for the delay, prejudice or lack of prejudice to the defendant, and intent or lack of intent to deliberately default or abandon the action.” (Moran v Rynar, 39 AD2d 718, 718-719; Batista v St. Luke’s Hosp., Woman’s Hosp. Div., 46 AD2d 806.) Here it is evident that the failure to appear in opposition on May 14, 1981 was at worst a mere oversight (D. M. G. Constr. Corp. v Marcello, 55 AD2d 670) and the conduct of the City up to May 14, 1981 and thereafter shows no intention to abandon its interest in these properties (Callado v Quinones, 52 AD2d 534).
Under these circumstances, the City’s application to vacate its default is manifestly reasonable and is granted.
Upon their motion, which resulted in the default order dated May 14, 1981, here at issue, the Owners asserted that the City had failed to give them adequate and proper notice under subdivision c of section D17-6.0 of the Administrative Code which requires the finance administrator to mail to owners a copy of the notice of foreclosure (see, also, Real Property Tax Law, § 1124, subd 2). The notice to be mailed is required to be sent to the address listed on the owner’s registration card, or if there be no registration card to the name and address appearing in the latest annual record of assessed violations. The Owners assert that the failure to give them notice rendered the judgment and deed void.
It must be recalled at this juncture that the City commenced this in rem tax foreclosure action in 1977 and *670 obtained a final judgment on May 25, 1978. The City and the Homesteaders thus assert that the Owners’ attempt to vacate the deed was barred on May 25, 1980. Section D1712.0 of the Administrative Code provides in pertinent part that: “c. Every deed given pursuant to the provisions of this section shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law were regular and in accordance with all provisions of law relating thereto. After two years from the date of the recording of such deed, the presumption shall be conclusive”. (Emphasis supplied; see, also, Real Property Tax Law, § 1136, subd 7.)
Subdivision c of section D 17-6.0 of the Administrative Code of the City of New York further provides that “[t]he failure of the finance administrator to mail such notice shall not affect the validity of any proceeding brought pursuant to this title as to any parcel other than the parcel with respect to which notice was not mailed.” (See Real Property Tax Law, § 1136, subd 7.)
Thus it is asserted that even if the finance administrator failed to mail the required notice, the Owners’ right to institute any proceeding to vacate the deeds was extinguished two years after their entry.
The Owners, however, assert that since no notice was ever mailed, the two-year limitation period cannot bar their application. Subdivision c of section D17-12.0 of the Administrative Code (see, also, Administrative Code, § D17-16.0, subd c; § D17-17.0, subd b) like subdivision 7 of section 1136 of the Real Property Tax Law, which language is nearly identical should be construed the same way. Under subdivision 7 of section 1136 it has been held that the presumption involved was only applicable to defects, including jurisdictional defects and had no bearing upon an action itself which was void from the beginning and which the foreclosing party had no right to institute in the first instance (Weaver Sons Co. v Burgess, 7 NY2d 172). In Cameron Estates v Deering (308 NY 24), relied on by the Owners, Suffolk County had foreclosed upon certain parcels within plaintiff’s 560-acre tract of land. Upon investigation the county conceded that these parcels had been *671 double assessed; that is the taxes had been assessed and paid by plaintiff and, in addition, had been assessed and charged to others who did not pay. The county relied upon the presumption of regularity which became conclusive after six years (Suffolk County Tax Act, § 53). There, the court held that “[t]here is a vast difference between a tax deed voidable for irregularity-in the proceedings and a tax deed void because the proceedings were a nullity due to prior payment of the tax.” (308 NY 2d, at p 30; emphasis in original.) The court held that the condition precedent to the commencement of the proceeding was the nonpayment of taxes. Since the taxes were, in fact, paid, the right to acquire plaintiff’s property in foreclosure never existed (see Joslyn v Rockwell, 128 NY 334).
In this case, however, the right to commence the tax foreclosure is not contested. The Owners admit that taxes were due on their premises and thus, at best, the deed was voidable. The failure to institute a proceeding within the two-year period set forth in the statute forecloses their right to do so. Moreover, the Owners cannot be heard to state that because they did not receive notice, they were unable to come forward within the requisite period. The Owners have asserted that under subdivision f of section D17-25.0 of the Administrative Code, they made application for release of the City’s interest in the properties on September 25, 1978. Thus it is readily admitted that the Owners knew of the tax foreclosure for more than 31 months before bringing on the motion to vacate the City deed.
The Owners’ further argument that the City waived the two-year Statute of Limitations is without merit. The Owners assert that by filing their applications for redemption on September 25,1978, the Statute of Limitations was tolled. The Owners’ unsigned, unsworn-to affidavit, dated May 13, 1981, contends that they duly filed their applications and were informed that they would receive notice within 60 days thereafter concerning the amount of taxes to be paid. The Owners say that to date they have not received any such notice.
The City, as noted previously, denied that applications for redemption were ever filed. The court notes that the *672 issue of whether the applications were filed as alleged appears, at least in part, to turn on whether the Owners submitted the required filing fee. The Owners submitted on this motion only a copy of the front of the check alleged to have been attached to the applications. That check bears no stamp or other sign of having been cashed.
In any event, when by November 25,1978, the promised notice did not arrive, the Owners were put on notice and had an affirmative duty to make inquiry and if necessary commence a proceeding for return of their properties. An Owner may not sit idly by and then argue that the City is estopped to "enforce the Statute of Limitations.
Finally, it is urged that the Owners’ motion to vacate the City’s deed was improper on its face. In Town of Somers v Covey (2 NY2d 250), the Court of Appeals ruled that a motion to vacate a default in a tax foreclosure and to set aside the deed on the ground of inadequate notice, even though made prior to the expiration of the two-year period after entry of the deed and prior to the presumption of regularity becoming conclusive, was not the proper procedure for attacking a deed. The court held “that where the deed has been delivered and recorded, an attack on the sufficiency of the notice may be made only in an action under subdivision 7 of section 165-h of the Tax Law” (2 NY2d, at p 258; emphasis in original). Former subdivision 7 of section 165-h of the Tax Law is now incorporated in subdivision 7 of section 1136 of the Real Property Tax Law which is identical to subdivision c of section D17-12.0 of the Administrative Code which provides: “No action to set aside such deed may be maintained unless the action is commenced and a notice of pendency of the action is filed in the office of the proper county clerk prior to the time that the presumption becomes conclusive as aforesaid.” (Emphasis supplied.)
In Covey (supra), as in this case, a motion was made in the foreclosure action rather than commencing a separate action as is required. Also, in Covey, as in this case, no notice of pendency had been filed. In Covey, the equities were far more compelling than they are in this case since the Court of Appeals assumed the truth of the “uncontradicted assertions” that the taxpayer was effectively not *673 notified of the foreclosure proceedings whereas in this case the assertions by the Owners of lack of adequate notice are contested and in Covey, the motion was brought within the two-year period whereas in this case the motion was not made until nearly three years after transfer of the deed. Notwithstanding the apparent equities, the court ruled that regardless of the merits of the Owners’ contentions, the motion must be denied on strictly procedural grounds. (Matter of City of New York v Realty Apts. Co., 72 AD2d 694.)
In view of the foregoing, the City’s motion to vacate its default is granted, the order of this court dated May 14, 1981 is vacated and the Owners’ motion to vacate and set aside the City’s deed recorded May 25, 1978 is denied.

 Section D17-25.0 of the Administrative Code provides in pertinent part that where a former owner of property acquired by the city in a tax foreclosure action files an application for return of the property within four months of its acquisition by the City, he is entitled to a mandatory release provided his application is approved as to form, timeliness and eligibility by the Corporation Counsel and further that he pays the outstanding tax and interest arrears within 60 days after the statement setting forth the amount to be paid is presented to him.