**SMALL ENGINE SHOP, INC.,**
Plaintiff-Appellant,

v.

**Concetta Cangelosi CASCIO, et al., Defendants,**

**Don Hathaway, Defendant-Appellee.**

No. 88-4636.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1989.

F. John Reeks, Bodenheimer, Jones, Klotz & Simmons, Shreveport, La., for plaintiff-appellant.

Curtis R. Shelton, Edwin L. Blewer, Samuel V. Prunty, Jr., Cook, Yancey, King & Galloway, Shreveport, La., for defendant-appellee.

Before GOLDBERG, REAVLEY and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant, Small Engine Shop, has propelled us to confront a sizable issue arising under the Due Process Clause of the Fourteenth Amendment. A Louisiana statute allows "any person" to request actual notice in advance of the seizure of specific immovable property by filing the request in the mortgage records of the parish in which the property is located. La.Rev.Stat. Ann. 13:3886 (West supp.1989). In *Mennonite Board of Missions v. Adams,* the Supreme Court held that any owner of property subject to deprivation must re-

ceive "notice by mail or other means as certain to ensure actual notice" of the event causing deprivation if the property owner's name and address are "reasonably ascertainable" through the exercise of "reasonable diligence." 462 U.S. 791, 103 S.Ct. 2706, 2711 n. 4, 2712, 77 L.Ed.2d 180 (1983).

We must decide whether the State may, consistent with the Constitution, prospectively shift the entire burden of ensuring adequate notice to an interested property owner regardless of the circumstances. The district court, imputing such a purpose to Louisiana's statute, held that the State may do so. We disagree. While the district court's interpretation is seductive, we believe that due process requires more than the right to be heard on demand. Because we interpret the statute simply as a supplement to Louisiana's preexisting constructive notice scheme in foreclosure actions, we reverse and remand for further proceedings.[1]

In Part I, we discuss the facts and explicate the statutory scheme. Part II addresses an issue not raised by the parties: whether the judgment below is final. In Part III, we probe the relationships among the Louisiana statute, vested property rights and the Due Process Clause.

## I.

Plaintiff-appellant Small Engine Shop, Inc. ("Small Engine") is a Louisiana corpo-

ration. Small Engine owned a piece of improved land in Caddo Parish, Louisiana, and had assumed a mortgage on the land, upon which the mortgagee foreclosed after Small Engine apparently defaulted.

Sheriff Don Hathaway is the defendant-appellee. Hathaway effected the seizure and conducted the sale. The other defendants below were Roy A. and Concetta Cangelosi Cascio, the foreclosing creditors, their attorney, S.V. Prunty, Jr., and Harold W. Longfellow, the buyer of the property at the foreclosure sale.

The Cascios owned the property in 1972. They conveyed the property to Wilbur Krouse in 1972 by a properly recorded deed. In return, the Cascios received cash and a note executed by Krouse to the order of any future holder. The note was secured by a mortgage, which was also properly recorded. Five conveyances of the property followed between 1973 and 1976. In each conveyance, the purchasing party assumed Krouse's original mortgage. Each conveyance was properly recorded in the Caddo Parish Conveyance Registry. Small Engine purchased the property in 1980, assuming the mortgage, and the conveyance was properly recorded in the Caddo Parish Conveyance Registry.

After Small Engine apparently defaulted, the Cascios, through their attorney Prunty, filed a petition seeking foreclosure on No-

1. Our interpretation of La.Rev.Stat.Ann. 13:3886 is identical to this Court's recent interpretation of the statute in *Davis Oil Co. v. Mills*, 873 F.2d 774, 787–88 (5th Cir., 1989).

In another case, the district court, as it makes clear in its opinion below, held that La.Rev.Stat. Ann. 13:3886 is constitutional as the sole mechanism for ensuring actual notice. *Mid–State Homes, Inc. v. Portis*, 652 F.Supp. 640 (W.D.La. 1987). A Louisiana appellate court has followed the holding in *Portis*. *Bankers Life Co. v. Shost*, 518 So.2d 563, 569 (La.App. 5th Cir.1987). Several courts in related contexts have addressed the constitutional validity of "request notice" statutes similar to La.Rev.Stat.Ann. 13:3886. *Compare Seattle–First National Bank v. Umatilla Co.*, 713 P.2d 33, 36 (Or.App. *en banc* 1986) (lienholder's failure to request notice of tax foreclosure did not relieve county of obligation to provide notice under *Mennonite* ); *Alliance Property Management v. Andrews Avenue Equities*, 133 A.D.2d 30, 518 N.Y.S.2d 804, 805–

06 (1st Dep't 1987), *aff'd on separate issue*, 70 N.Y.2d 831, 523 N.Y.S.2d 441, 517 N.E.2d 1327 (N.Y.1987); *In the Matter of Foreclosure of Tax Liens by Erie*, 103 A.D.2d 636, 481 N.Y.S.2d 547, 550 (4th Dep't 1984); *Wylie v. Patton*, 111 Idaho 61, 720 P.2d 649, 652–54 (App.1986); *Jefferson Township v. Block 447A, Lot 10*, 228 N.J.Super. 1, 548 A.2d 521, 524 (A.D.1988); *Town of Phillipsburg v. Block 22 Lots 14, 15, 16*, 218 N.J.Super. 558, 528 A.2d 98, 100–01 (N.J.Super.Ch. 1987) *with In the Matter of Tax Foreclosure No. 35*, 127 A.D.2d 220, 514 N.Y.S.2d 390, 393 (2d Dep't 1987) (property owner failed to file an "in rem" owner registration card under Administrative Code of City of New York and therefore was not entitled to actual notice of tax sale), *aff'd without reaching constitutional issue*, 71 N.Y.2d 863, 527 N.Y.S.2d 747, 522 N.E.2d 1044 (1988). *See also Cooper v. Makela*, 629 F.Supp. 658, 661 n. 7 (W.D.N.Y.1986) (citing approvingly *In the Matter of Foreclosure of Tax Liens by Erie*, 103 A.D.2d 636, 481 N.Y.S.2d 547).

vember 15, 1987. Pursuant to a writ of seizure and sale, Sheriff Hathaway served Krouse's estate on December 16, 1987. On December 17, 1987, a notice of seizure was recorded in the Caddo Parish mortgage records. The sheriff published notice of the impending sale in *The Shreveport Journal* on January 8, 1988 and February 5, 1988. Harold Longfellow purchased the property at the sheriff's sale on February 10, 1988. The district court found that Small Engine did not receive notice of either the seizure or the sheriff's sale (R. 113).

Krouse's mortgage contains a confession of judgment. In Louisiana, a confession of judgment is contractual, and "effectively waives the right to a routine adversary hearing." *Buckner v. Carmack*, 272 So.2d 326, 330 (La.1973), *appeal dismissed*, 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974). Under Louisiana law, a mortgagee, in this case the Cascios, may foreclose on a mortgage containing a confession of judgment by executory process—an *ex parte* proceeding. La.Code Civ. P. art. 2631 (West 1961 & 1989 supp.). The mortgagee must file a petition to enforce the mortgage. In the petition, the mortgagee must request "seizure and sale of the property affected by the mortgage...." *Id.* art. 2634. The reviewing court, if it is satisfied that the executory petitioner is entitled to relief, "shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property...." *Id.* art. 2638.

If the original mortgagor, in this case Krouse, has sold the property to a third party, the mortgagee may enforce the original mortgage directly against the property under the Louisiana scheme "without reference to any sale or alienation to the third person.... The third person who then owns and is in possession of the property need not be made a party to the proceed-

ing." *Id.* art. 2701. Small Engine is the "third person" within the meaning of the statute. In the civil law's latinate locution, article 2701 creates a statutory *pact de non aliendo* for all mortgages containing a confession of judgment. *See Davis Oil Co.*, 873 F.2d at 778.

The Louisiana Code provides that the original mortgagor (Krouse's estate, in this case) is entitled to actual notice of seizure of the property pursuant to the writ. La. Code Civ. P. Art. 2721. In addition, after seizure, the sheriff must "advertise the sale of the property...." *Id.* Art. 2722. The current owner of the property is not entitled to actual notice of the seizure under the statutory scheme. *See id.* Art. 2721, Official Revision Comments ("any requirement of service of seizure by the sheriff upon the person in possession of the property would destroy the efficacy of executory process").[2]

A foreclosure sale extinguishes all inferior encumbrances on the property. *Id.* arts. 2724, 2376; *see Davis Oil Co.*, 873 F.2d at 779. A sale also extinguishes the possessing third person's ownership interest. Assuming, however, that the possessing third person in some way has received notice of the sheriff's sale, she may prevent the sale's effectuation. "When property sold or otherwise alienated by the original debtor or his legal successor has been seized or is about to be sold under executory process, a person who has acquired the property and assumed the indebtedness secured by the mortgage or privilege thereon may: (1) Pay the balance due on the indebtedness ... or (2) arrest the seizure and sale [of the property by injunction in certain circumstances]." La. Code Civ. P. art. 2702; *see* art. 1092.

In 1982, Louisiana enacted the "request notice" statute which lies at the core of this controversy. The statute provides that actual notice of seizure of immovable proper-

---

**2.** *But see Bonner v. B–W Utilities,* 452 F.Supp. 1295, 1302 (W.D.La.1978) ("When property owned by a third possessor is secured by an *in rem* mortgage ... service of notice ... upon the original debtors accomplishes nothing. The original mortgagor has no stake in the proceedings.... [W]here his name and address are known to the seizing creditor it is a denial of due process not to direct some form of notice of the judicial proceedings to the property owner in addition to general publication"). *Bonner* predates by four years the request notice statute at the heart of this dispute. La.Rev.Stat.Ann. 13:3886 (West supp.1989).

ty is available to those requesting such notice:

A. Any person desiring to be notified in the event specific immovable property is seized shall file a request for notice of seizure in the mortgage records of the parish where the immovable property is located. The request for notice of seizure shall state the legal description of the immovable property, the owner of the property, and the name and address of the person desiring notice of seizure. The person desiring notice of seizure shall pay the sum of ten dollars to the sheriff, for deposit in the sheriffs' general fund, to defray the cost of providing the notice of seizure in the event said property is seized.

B. In the event of seizure of immovable property, the sheriff shall request from the clerk of court ... a mortgage certificate at least twenty-one days prior to the sheriff's sale. The mortgage certificate shall include any requests for notice of seizure. Upon receipt of the mortgage certificate the sheriff shall notify, at least ten days prior to the sheriff's sale, those persons requesting notice of the seizure. The notice of seizure shall be by certified mail or actual delivery and shall include the name and address of the seizing creditor, the method of seizure and the sum owed, and the date of the sheriff's sale.

C. Neither the clerk of court or the sheriff, or any of their officers, agents or employees, shall be held liable if a reasonable attempt has been made to mail or deliver the notice to the address provided in the request.

D. The failure of the sheriff to notify a person requesting notice of seizure shall not affect the rights of the seizing creditor nor invalidate the sheriff's sale.

La.Rev.Stat. 13:3886 (West supp.1989). Small Engine did not request notice of seizure under La.Rev.Stat. 13:3886.[3]

Small Engine filed its complaint on March 17, 1988 in the Western District of Louisiana, alleging under 42 U.S.C. § 1983 that the foreclosure without actual notice to Small Engine effected a deprivation of property without due process.[4] Small Engine requests that the sale be rescinded. The complaint named Hathaway, the Cascios, Prunty and Longfellow as defendants. All defendants answered. Hathaway moved for summary judgment. The district court ordered "that the motion for summary judgment filed on behalf of Sheriff Don Hathaway is granted and the action dismissed with prejudice" (R. 117). The court held that La.Rev.Stat. 13:3886 is constitutional as the sole mechanism for any person to receive actual notice, before a foreclosure, that the sheriff has seized immovable property.[5]

In effect, the district court held that 13:3886 applies to any foreclosure action, regardless of the factual context, regardless of the nature of the property right subject to deprivation, and regardless of whether the responsible state actor, exercising reasonable diligence, may reasonably ascertain the identity of the owner of the property right subject to deprivation. Louisiana's statute, as construed by the district court, eliminates the circumstantial nature of a due process inquiry by prospectively shifting the entire burden of ensuring actual notice, in every case, to the owner of property subject to deprivation.

## II.

■ We raise the question whether the judgment below is final for purposes of this appeal. F.R.Civ.P. 54(b). Although only appellee Hathaway, among the defen-

---

3. For a useful discussion of the Louisiana statutory scheme in this context, see M.H. Rubin & E.K. Carter, *Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings: The Ramifications of* Mennonite, 48 La.L.Rev. 535 (1988); *see also Davis Oil Co.,* 873 F.2d at 777–79.

4. Apart from its claim to actual notice, Small Engine does not attack the executory process

scheme or the utilization of the process by the Cascios and Sheriff Hathaway in this case.

5. La.Code Civ.P. art. 2721, as we discuss above, requires actual notice of the sheriff's sale to the original mortgagor—in this case, Krouse's estate—after the judicial issuance of the writ of seizure and sale.

dants, moved for judgment, the district court's judgment is final because the court held that Small Engine had stated no due process claim. Small Engine alleged in its complaint only a due process violation. Since the court's holding left Small Engine without an underlying claim, the court's dismissal with prejudice of the action constitutes a dismissal of the entire case. "[A] district court may dismiss a complaint on its own motion for failure to state a claim." *Shawnee International, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir.1984) (citations omitted). Copies of the court's order were sent to all parties on July 28, 1988 (R. 117).

Although only appellee Hathaway, among the defendants, appeared before us at oral argument, the record reflects that the other defendants had an opportunity to appear. Small Engine's notice of appeal states that it is from the order "granting defendant's Motion to Dismiss and dismissing plaintiff's Complaint" (R. 118). Copies were sent to all parties in accordance with F.R.App.P. 3 on August 23, 1988 (R. 118). In addition, Small Engine mailed copies of its notice of appeal to Prunty, the Cascios' attorney, and Longfellow on August 22, 1988 (R. 119). Since the district court's judgment is final, and because Small Engine perfected its appeal, we may properly decide this case.

## III.

We begin our constitutional inquiry with two observations. First, it is uncontested that Small Engine's property interest falls within the ambit of the Fourteenth Amendment's Due Process Clause. Second, we note that Louisiana's civil law focuses on the *in rem* nature of the executory proceeding. Where due process rights are concerned, however, the *in rem/in personam* distinction is not clearly demarcated. Property rights are personal rights, just as liberty rights are personal rights. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *Mennonite*, 103 S.Ct. at 2710 n. 3.

## A.

Due process may be an evasive concept in particular circumstances. Yet its boundaries lie in sharp silhouette against the background of rights protected by the Clause. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (Jackson, J.). Adequate notice ensures the opportunity to be heard—the value at the core of the DUE PROCESS CLAUSE, the roots of which lie in the soil of Runnymede. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 70 S.Ct. at 657.

*Mullane* remains our trusted guide. "*Mullane* ... established that state action affecting property must generally be accompanied by notification of that action: 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). "In the years since *Mullane* the Court has adhered to these principles, balancing the 'interest of the State' and 'the individual interest sought to be protected by the Fourteenth Amendment.' *Ibid.* The focus is on the reasonableness of the balance, and, as *Mullane* itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances." *Id.* 108 S.Ct. at 1344.

Our inquiry is not open-ended, for the Supreme Court has articulated a standard allocating the burdens of notice in this due process context. An owner of property subject to deprivation by state action is entitled to means as certain as mail to

ensure actual notice if her name and address are reasonably ascertainable through the exercise of reasonably diligent efforts. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983); *Pope,* 108 S.Ct. at 1347–48. *Mennonite's* standard expresses the relationship between the responsible state actor and the property owner claiming the due process right. Although the diligence that is reasonable will vary from context to context, *Mennonite* informs us that reasonable diligence is expected from the responsible state actor. *Mennonite,* 103 S.Ct. at 2711–12; *Pope,* 108 S.Ct. at 1347–48.

In *Mennonite,* the Mennonite Board of Missions held a mortgage on real property located in Indiana executed by Moore, the property owner. Moore failed to pay taxes on the property. Pursuant to Indiana law, the county sold the property to appellee Richard Adams at a tax sale. Moore continued to make payments to Mennonite after the sale, however, so Mennonite did not learn of the sale until the statutory redemption period had expired. At this point, Moore still owed Mennonite over $8,000.00. Adams sued to quiet title. Mennonite "contended that it had not received constitutionally adequate notice of the pending tax sale and of the opportunity to redeem the property following the tax sale." 103 S.Ct. at 2709.

Relying on *Mullane,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court agreed with Mennonite, stating that "unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*" *Id.* 103 S.Ct. at 2711.

> Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose

security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation. It is true that particularly extensive efforts to provide notice may often be required when the State is aware of a party's inexperience or incompetence. But it does not follow that the State may forgo even the relatively modest administrative burden of providing notice by mail to parties who are particularly resourceful. Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Id.* at 2712 (emphasis in original). As we have noted, *Mennonite* requires the responsible state actor to make "reasonably diligent" efforts to ascertain the identity of the property owner. *Id.* at 2711 n. 4.

■ The district court held—and appellee Hathaway contends—that consistent with *Mennonite,* Louisiana's request notice provision, La.Rev.Stat.Ann. 13:3886, in conjunction with constructive notice by publication, provides all the process due Small Engine. *Mennonite* specifically did not address the effect of a statute similar to 13:3886:

> Indiana Code § 6–1.1–24–4.2 (1982), added in 1980, provides for notice by certified mail to any mortgagee of real property which is subject to tax sale proceedings, if the mortgagee has annually requested such notice and has agreed to pay a fee, not to exceed $10, to cover the cost of sending notice. Because the events in question in this case occurred before the 1980 amendment, the constitutionality of the amendment is not before us.

103 S.Ct. at 2708 n. 2.[6]

Under the view adopted by the district court, Louisiana's statute constitutionally

---

**6.** After the Court decided *Mennonite,* Indiana   deleted the request notice provision in the stat-

provides the sole mechanism for actual notice to owners of property rights subject to deprivation by foreclosure. Whether an owner of a property right chooses to utilize the mechanism, the argument goes, is entirely within the owner's control because one is presumed to know the existence and content of legislative enactments. According to this view, the process that is one's due in this context exists in the positive law marriage of La.Rev.Stat. 13:3886 with the constructive notice scheme mandated by Louisiana law.

Alternatively, one may contend that the request notice statute simply acts as a supplement to notice by publication, allowing otherwise unascertainable parties to make themselves known. A panel of this Circuit adopted this latter view after the district court's judgment in this case. *Davis Oil Co.*, 873 F.2d at 787–89.

The district court's reading of the Louisiana statute is alluring. Property owners are presumed to have "knowledge of relevant statutory provisions affecting the control or disposition of their property." *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982); *accord North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925); *cf. Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1958).[7] According to the district court, the request notice statute "is a reasonable restriction placed on [an] individual's property right to further a legitimate state objective in providing for a uniform and orderly method by which to notify interested parties prior to seizure of immovable property." Memo-

randum Opinion (R. 116). Thus, the statute, the reasoning goes, prospectively and legitimately shifts the entire burden of ensuring actual notice to the property owner subject to deprivation.

As we have stated, the state interest/individual interest balance in a due process inquiry finds its abstract expression in *Mennonite*'s standard: whether the identity of the owner of property subject to deprivation is reasonably ascertainable by the exercise of the responsible state actor's reasonably diligent efforts. *Mennonite*, 103 S.Ct. at 2711–12; *Pope*, 108 S.Ct. at 1347–48. The content of "reasonable diligence" will vary in different circumstances. The type of property interest or type of recording system involved may bear on the "reasonable diligence" analysis. For example, the identity of a severed estate owner may be significantly more difficult to discern than the identity of the surface owner. A foreclosing creditor's reasonable diligence may not uncover the identity of a mineral interest owner. In such a case, the foreclosing creditor is not obligated to provide actual notice of the foreclosure proceedings to the mineral interest owner. *Davis Oil Co.*, 873 F.2d 774, 788–91 (5th Cir.1989).

Given *Mennonite* and *Pope*, the argument that La.Rev.Stat.Ann. 13:3886 constitutionally provides the sole mechanism for actual notice in foreclosure actions depends upon whether one may properly equate (1) the enactment of a statute that prospectively shifts the burden, in every case, of providing actual notice to owners of property subject to deprivation; with (2) the reason-

---

ute. Ind.Code Ann. § 6–1.1–24–4.2 (Burns supp. 1988); *Town of Phillipsburg v. Block 22 Lots 14, 15, 16*, 218 N.J.Super. 558, 528 A.2d 98, 101 n. 2 (Ch.1987). After *Mennonite* but before the amendment, a federal district court in Indiana held that the "scheme to provide personal notice of tax sales to those mortgagees who request it is a reasonable approach to balance the interests of the State in efficiently collecting taxes with the interests of mortgagees who are entitled to notice of State action affecting their property interests." *See In the Matter of Tax Foreclosure No. 35*, 127 A.D.2d 220, 514 N.Y.S.2d 390, 393 (2d Dep't 1987) (discussing *Homemakers Finance Service, Inc. v. Jones* (S.D.Ind., Indianapolis Div., Sept. 4, 1984, Dillin, J.).

7. Small Engine also contends, in effect, that its case falls under the protection of *Lambert*, which held that individuals may indeed sometimes justify their ignorance of the law. 78 S.Ct. at 243; *but see id.* at 245 (Frankfurter, J., dissenting) ("I feel confident that the present decision will turn out to be an isolated deviation from the strong current of precedents—a derelict on the waters of the law"). We note that Small Engine purchased the property in 1980, and La.Rev.Stat.Ann. 13:3886 was enacted in 1982, *cf. Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 788, 70 L.Ed.2d 738 (1982) (Brennan, J., dissenting), but we do not rest our decision on a *Lambert*-related argument.

ably diligent efforts of the responsible state actor, in every case following the enactment of the statute, to ascertain the identity of owners of property subject to deprivation. In other words, the district court held that the opportunity to be heard that is guaranteed by the Due Process Clause—the constitutional value underlying an actual notice requirement—exists in the enactment of the statute, coupled with Louisiana's preexisting constructive notice scheme.

We do not believe the circumstantial nature of a due process inquiry emphasized by the Supreme Court is compatible with the district court's equation. Facts matter, and factual matrices differ. As the district court interpreted the Louisiana statute, the entire content of state actors' reasonable diligence in every case from here to eternity finds its equivalent in this single expression of legislative power. Runnymede's legacy cannot countenance this result in the face of *Mennonite*.

■ Under the district court's approach, La.Rev.Stat.Ann. 13:3886 would constitute an unnecessarily sweeping, "unreasonable procedure" inconsistent with constitutional limitations upon legislative action. *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925). In contrast, we believe that the statute simply supplements Louisiana's preexisting constructive notice scheme. *Cf. Magee v. Amiss*, 502 So.2d 568 (La.1987) (due process rights of a community property co-owner violated when she failed to receive actual notice of a sheriff's sale; Court did not consider the effect of the request notice provision). Moreover, because our approach avoids finding constitutional defects in the statute, prudence dictates our conclusion. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 480, 483–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 166 (5th Cir.

1978), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).[8]

### B.

We hold that La.Rev.Stat.Ann. 13:3886, as interpreted by the district court, cannot be squared with *Mennonite*'s allocation of notice burdens. Appellee argues, however, that a recent line of authority establishes the correctness of the district court's holding. *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (holding constitutional a statute providing that a mineral interest would lapse to the surface owner if the interest owner either made no use of the interest, or failed to file a claim with the State, within a twenty year period); *see United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (holding constitutional a federal recording system requiring owners of certain mineral interests on federal lands to file annual claims of their interest, in the absence of which the interest would escheat to the federal government); *see also Pope*, 108 S.Ct. 1340.

*Short*, *Locke* and *Pope* all concern legislative enactments burdening the enjoyment of a vested property right. In *Locke*, the Court addressed the State's ability to affect vested property rights through legislation:

> Even with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties. As long as the constraint or duty is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties. 'Legislation readjusting rights and burdens is not unlawful solely be-

---

**8.** A Louisiana appellate court has held that the view of 13:3886 adopted by the district court in this case is consistent with the Due Process Clause of the Fourteenth Amendment. *Bankers Life Co. v. Shost*, 518 So.2d 563, 569 (La.App. 5th Cir.1987). While we respect the view of the

Louisiana court, we cannot accept its conclusion, and we are not bound, of course, by a state court's determination of a state statute's validity under the federal constitution. U.S. Const. art. VI; *see, e.g., Mercer v. Long Manufacturing*, 665 F.2d 61, 73 (5th Cir.1982).

cause it upsets otherwise settled expectations.'

*Locke,* 105 S.Ct. at 1797 (citations omitted). In *Locke,* as in *Short,* the enactment of the valid statute provided the complainants

with all the process that [was] their constitutional due. In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements. *Short,* 454 U.S. at 532, 102 S.Ct. at 793; see also *Anderson National Bank v. Luckett,* 321 U.S. 233, 243, 64 S.Ct. 599, 604, 88 L.Ed. 692 (1944); *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925).

*Locke,* 105 S.Ct. at 1799–1800.

Appellee Hathaway conflates the substantive regulation of property interests with the procedural safeguards that regulate the deprivation of those interests. Neither *Locke* nor *Short* is inconsistent with the principle that the process guaranteed by the Constitution, as it relates to one's opportunity to be heard before the ultimate deprivation of a property right, must be determined independent from the effect on the property right by a legislative enactment. "[A]ny other conclusion would allow the State to destroy at will virtually any State-created property interest." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("The categories of substance and procedure are distinct. Were the rule to be otherwise, the [Due Process] Clause would be reduced to a mere tautology"); *see Davis Oil Co.,* 873 F.2d at 782–787.

The statute at issue in this case, as interpreted by the district court, simply concerns Louisiana's allocation of the burden of pre-deprivation actual notice in foreclosure actions. Unlike the statutes in *Locke* and *Short,* La.Rev.Stat.Ann. 13:3886 does not represent a direct attempt, predicated on state interests relating to land use, to condition the continued retention of property rights in Louisiana. The Louisiana statute, under the district court's reading, simply purports to address the process that is one's due when an external event— default—draws into question the continued retention of one's property right. In *Locke* and *Short,* the event bearing on the continued retention of a property interest had its genesis in the content of the legislative enactment, and the enactment of the substantive regulation afforded all the process that was due in those cases. *Locke,* 105 S.Ct. at 1799–1800.

We recognize, however, that La.Rev.Stat. Ann. 13:3886, as interpreted by the court below, bears on the content of the contested property right in a practical sense. By failing to request notice, a property owner may lose the property of which she claims ownership, only knowing of the loss after the fact. But even if we regarded La.Rev. Stat.Ann. 13:3886 as a legislative effort to burden property rights within the meaning of *Locke* and *Short*—which would reflect a positivism rejected by the Supreme Court— we do not believe that the statute, as interpreted by the district court, would constitute a "legitimate legislative objective," *Locke,* 105 S.Ct. at 1797, outweighing the due process interests of individual property owners subject to deprivation in all future cases.

In *Short,* the State of Indiana enacted a Mineral Lapse Act to remedy uncertainties in titles created by stale and abandoned mineral interests, and to encourage the productive use of land and the exploitation of energy and other mineral resources. 102 S.Ct. at 789. In *Locke,* Congress enacted a "federal recording system to rid federal lands of stale mining claims and to provide federal land managers with up-to-date information that allows them to make informed land management decisions." 105 S.Ct. at 1789. *Locke* and *Short* thus concern pervasive land use problems that justified the state action burdening property owners.

On the other hand, the statute in this case, as interpreted by the court below, furthers a "legitimate state objective" in providing for a "uniform and orderly method" of notice (R. 116). In other words, under this view, the statute properly creates a comprehensive new recording system that is independent of the existing systems recording property interests, and that replaces all preexisting burdens of actual notice shouldered by state actors. Such a novel system undoubtedly would provide notice in a uniform and orderly manner, but efficiency is not the standard-bearer of due process. Indeed, efficient governance and due process struggle in an inherently tense relationship.

Under *Mullane*, 70 S.Ct. 652, *Mennonite*, 103 S.Ct. 2706, and *Pope*, 108 S.Ct. 1340, the burden of pre-deprivation notice depends upon the circumstances surrounding particular property interests. Reasonable diligence in one context may become impossibility in the next. While new recording systems may introduce desirable efficiencies consistent with the due process clause, we cannot sanction the sweeping scheme constituted by the Louisiana statute as construed by the court below. In short, reallocation of procedural notice burdens in avoidance of *Mennonite* falls short of the state interests justifying the legislation in *Locke* and *Short*.

*Short*'s sweep is limited for another significant reason. Justice Stevens was careful in *Short* to distinguish between the effect of a properly-enacted, self-executing burden on one's property right, "and a subsequent judicial determination that a particular lapse did in fact occur." 102 S.Ct. at 794.

> It is undisputed that before judgment could be entered in a quiet title action that would determine conclusively that a mineral interest has reverted to the surface owner, the full procedural protections of the due process clause—including notice reasonably calculated to reach all interested parties and a prior opportunity to be heard—must be provided.

*Id.* at 794. Issues of fact, then, if raised and proven by a mineral interest owner in a *Short* context, may prevent the ultimate loss of her mineral interest even after the statute has worked its effect. *Short* envisions such a contest as a separate due process issue from the process due in the enactment of the statute. In this case, the sheriff's sale, pursuant to a judicially-executed writ of seizure and sale, is a final act which has deprived Small Engine of property under the district court's interpretation of La.Rev.Stat.Ann. 13:3886. Judicially-sanctioned, circumstantial finality is the type of proceeding that the Court in *Short* did not address in its due process inquiry.

Appellee Hathaway also argues that the "private interest affected in this case was the ownership of a corporation which did not pay its assumed obligation, and which, therefore, presumably knew that it was risking foreclosure." Brief for Appellee at 9. We recognize that "It is the part of common prudence for all those who have any interest in [a thing], to guard that interest...." *Mullane*, 70 S.Ct. at 658, quoting Chief Justice Marshall's opinion in *The Mary*, 9 Cranch 126, 144, 3 L.Ed. 678 (1815). Small Engine's equitable position may be weaker than that of the plaintiff trust beneficiaries in *Mullane*, 70 S.Ct. 652, or the mortgagee adversely affected by the tax sale in *Mennonite*, 103 S.Ct. 2706. *Mennonite*'s dictates, however, govern "a proceeding which will adversely affect the liberty or property interests of *any* party." *Id.* at 2712. Moreover, "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Id.*

Most important, the statute, as interpreted by the district court, sweeps far beyond those whose appeals to equity may appear to be weak, and it is the scope of the statute with which we are solely concerned, not whether Small Engine presses its case with unclean hands. Whether Small Engine's possible failures in self-catalysis bear on *Mennonite's* "reasonable diligence" command in this context is not a question we face today.

### IV.

We hold that La.Rev.Stat.Ann. 13:3886 acts only to supplement Louisiana's preex-

isting constructive notice scheme in Louisiana foreclosure actions. The provision gives property owners, whose identities a reasonably diligent, responsible state actor could not reasonably ascertain, the opportunity to request such notice and thereby become ascertainable.[9]

We cannot determine from the record whether the exercise of reasonable diligence would have uncovered the identity of Small Engine before the sheriff's sale occurred in this case. We leave this determinative factual inquiry to the district court on remand. *Pope*, 108 S.Ct. at 1348. Nor do we consider the relationship, for purposes of a state action determination, between the appellee, Sheriff Hathaway, and the other defendants who did not appear before us on appeal. We do not determine the proper allocation of notification responsibility between the sheriff and the foreclosing creditors. If necessary, the district court on remand should consider this issue.[10]

REVERSED AND REMANDED.

9. Because Small Engine did not request notice under La.Rev.Stat.Ann. 13:3886, we do not decide whether the provisions of the statute are constitutional in their entirety. *See Davis Oil Co.*, 873 F.2d 774, 790 n. 23 (5th Cir., 1989). We merely hold that the statute does not relieve the responsible state actor in a particular case from exercising the "reasonable diligence" appropriate in the circumstances to ascertain, reasonably, the identity of an individual or entity subject to the deprivation of property.

10. Nor do we determine today the proper content of the phrase "actual notice." *See Weigner v. City of New York*, 852 F.2d 646 (2d Cir.1988).