**EDWARDS AQUIFER AUTHORITY, Appellant,**

v.

**PEAVY RANCH, Appellee.**

No. 04–05–00412–CV.

Court of Appeals of Texas, San Antonio.

Feb. 22, 2006.

Andrew S. (Drew) Miller, Darcy Alan Frownfelter, Deborah Clarke Trejo, Kemp Smith L.L.P., Austin, for appellant.

Howard P. Newton, Cox Smith Matthews Incorporated, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

The Edwards Aquifer Authority ("EAA") determined that the application for an initial regular permit filed by Peavy Ranch was untimely and denied the permit on that basis. Peavy Ranch filed a petition for review seeking to reverse EAA's order asserting that due process of law required individualized notice to Peavy Ranch. The trial court granted summary judgment in favor of Peavy Ranch, reversing EAA's order and remanding the cause for consideration of the merits of Peavy Ranch's permit. On appeal, EAA asserts that Peavy Ranch did not have a protected property interest or, if such an interest existed, all constitutionally required notice was provided. We hold that Peavy Ranch received all notice it was constitutionally entitled to receive; thus, we reverse the trial court's judgment and render judgment affirming the EAA's order.

## BACKGROUND

In 1993, the Legislature enacted the Edwards Aquifer Act to manage the Edwards Aquifer, which is the primary source of water for residents in south central Texas. Section 1.15 of the Act prohibits any person from withdrawing water from the aquifer without a permit. Section 1.16 of the Act contains a procedure for the issuance of initial regular permits to existing users. Section 1.16 required existing users to apply for a permit by filing a declaration of historical use on or before March 1, 1994.

Although the Act was passed to take effect on September 1, 1993, the effective date was later amended in subsequent legislation passed in response to the United States Department of Justice's refusal to give administrative pre-clearance under the Voting Rights Act. The amended act was to be effective on August 28, 1995; however, a lawsuit was filed, and a district court held the Act unconstitutional and enjoined the enforcement of the Act.[1] The district court's judgment was reversed by the Texas Supreme Court in 1996, and the Texas Supreme Court held that the deadline for filing the declarations of historical use was six months after the effective date of the Act. The Act became effective on the date the Texas Supreme Court dissolved the district court's injunction, making the deadline for filing the declarations of historical use December 30, 1996.[2]

1. *See Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618 (Tex.1996).

2. In *Edwards Aquifer Authority v. Chemical Lime, Ltd.,* No. 03–04–00379–CV, 2006 WL 305180 (Tex.App.-Austin Feb.10, 2006, no pet. h.), the Austin court reversed a district court's judgment invalidating the filing deadline and rendered judgment that the EAA "acted under its statutory authority in setting a deadline for filing declarations of historical use of December 30, 1996."

Peavy Ranch did not file its declaration until December 31, 1997.

EAA's general manager proposed that the application be denied because the deadline was missed. Peavy Ranch protested, and a contested case hearing was held by an administrative law judge. The administrative law judge issued a proposal for decision recommending that the application be denied because it was untimely filed. EAA's Board issued an order denying the application on the recommended grounds.

Peavy Ranch filed an original petition for review in the trial court requesting that EAA's order be reversed. The parties filed competing motions for summary judgment, and the trial court entered judgment in favor of Peavy Ranch, reversing EAA's order.

## DISCUSSION

In its second issue, EAA argues that even if Peavy Ranch had a protected property interest, Peavy Ranch received all notice it was constitutionally entitled to receive. For purposes of this appeal, we will assume, without deciding, that Peavy Ranch had a protected property interest.

EAA asserts that when legislation is enacted affecting a general class of persons, those persons have received all process that they are constitutionally entitled to receive via the legislative process. EAA distinguishes between notice required in relation to a self-executing feature of legislation and an adjudicative proceeding. Peavy Ranch counters that although it was not entitled to individualized notice when the Act was adopted, it was entitled to individualized notice before the EAA could implement the permit deadline resulting in a loss of Peavy Ranch's vested property rights.

In *Texaco, Inc. v. Short*, the United States Supreme Court discussed the notice that must be provided to mineral interest owners during the adoption and application of a statute affecting their interests. 454 U.S. 516, 518, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The statute in question provided that a severed mineral interest that was not used for a period of twenty years would automatically lapse and revert to the current surface owner of the property unless, absent certain other activity, the mineral owners filed a statement of claim in the local county recorder's office within two years from the date of the enactment. *Id.* The Court initially noted that it had previously upheld the power of a state to condition the retention of a property right upon the performance of an act within a limited period of time. *Id.* at 529, 102 S.Ct. 781. The Court also noted that actions required by the statute furthered a legitimate state goal. *Id.*

In addressing the nature of the notice required, the Court initially held that no individualized notice of the enactment was required, asserting, "Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532, 102 S.Ct. 781. "It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Id.* "It is also settled that the question [of] whether a statutory grace period provides an adequate opportunity for citizens to become familiar with a new law is a matter on which the Court shows the greatest deference to the judgment of the state legislatures." *Id.* "A legislative body is in a far better position than a court to form a correct judgment concerning the number of persons affected by a change in the law, the means by which information concern-

ing the law is disseminated in the community, and the likelihood that innocent persons may be harmed by the failure to receive adequate notice." *Id.* The Court held that it could not conclude that the two-year grace period was constitutionally inadequate. *Id.* at 532–33, 102 S.Ct. 781.

Peavy Ranch does not appear to be challenging the notice it was required to be given of the enactment of the Act, but rather the notice it should have received before the Act was applied to it. This challenge is similar to the second notice challenge raised in *Short,* in which the mineral interest owner asserted that the owner "had a constitutional right to be advised—presumably by the surface owner—that their 20–year period of nonuse was about to expire." *Id.* at 533, 102 S.Ct. 781. Similarly, in this case, Peavy Ranch appears to be contending that it had a constitutional right to be advised by EAA of the permit filing requirement applicable to its land, especially given the information regarding well ownership available to EAA.

In order to address the second notice challenge in *Short,* the Court asserted that "it is essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur." *Id.* at 536, 102 S.Ct. 781. Although notice would be required in a proceeding to adjudicate whether the lapse did occur, "it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Id.* In rejecting the cases cited by the owner in support of this second notice challenge, the Court concluded, "None of the cases cited by appellants suggests that an individual must be given advance notice before such

a rule of law may operate." *Id.* at 537, 102 S.Ct. 781. This holding applies with equal force in the instant case such that due process did not require that Peavy Ranch receive individualized notice before the deadline for filing the permit application could be applied to its property interest. Although Peavy Ranch was entitled to notice and a right to be heard in adjudicating whether a "lapse" or failure to timely file the application occurred,[3] Peavy Ranch was not entitled to individualized notice that the deadline would apply to its property rights.

In *U.S. v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), the United States Supreme Court reinforced its holding in *Short* with regard to the nature of the notice that must be constitutionally provided when a statute imposes new regulatory constraints on the way in which vested property rights are used or on the way in which those rights may be retained. The Court reasoned, "In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Id.* at 108, 105 S.Ct. 1785. The Court held that the three year grace period given to comply with the enactment in question afforded sufficient notice under the facts presented. *Id.* In rejecting an individualized notice requirement, the Court noted:

> The District Court may well be right that such an individualized notice scheme would be a sound means of administering the Act. But in the regula-

---

**3.** Such notice and right to be heard were satisfied in the underlying proceedings.

tion of private property rights, the Constitution offers the courts no warrant to inquire into whether some other scheme might be more rational or desirable than the one chosen by Congress; as long as the legislative scheme is *a* rational way of reaching Congress' objectives, the efficacy of alternative routes is for Congress alone to consider. "It is enough to say that the Act approaches the problem of [developing a national recording system] rationally; whether a [different notice scheme] would have been wiser or more practical under the circumstances is not a question of constitutional dimension."

*Id.* at 109, 105 S.Ct. 1785 (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 19, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)).

Peavy Ranch relies heavily on *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir.1989). In that case, a Louisiana statute required that notice of a seizure in preparation for a foreclosure be provided to the current owner of the property only if the owner had filed a request for notice in the property records in advance of a seizure. *Id.* at 883–885. Unlike the Act, the Louisiana statute dealt with whether notice was required to be provided to a property owner upon the occurrence of a specific event that would result in the seizure of that owner's property, not with a statute designed to impose regulatory constraints upon numerous property interest owners in furtherance of legitimate state interests. As the court noted in *Small Engine*, "even if we regarded [the Louisiana statute] as a legislative effort to burden property within the meaning of *Locke* and *Short*—which would reflect a positivism rejected by the Supreme Court—we do not believe that the statute, as interpreted by the district court, would constitute a 'legitimate legislative objective.'" *Id.* at 891 (citing *Locke*). Furthermore, the facts in *Small Engine* are distinguish-

able from this case for the very reasons the Fifth Circuit gave in its opinion to distinguish *Short* and *Locke:*

> The statute at issue in this case, as interpreted by the district court, simply concerns Louisiana's allocation of the burden of pre-deprivation actual notice in foreclosure actions. Unlike the statutes in *Locke* and *Short*, [the Louisiana statute] does not represent a direct attempt, predicated on state interests relating to land use, to condition the continued retention of property rights in Louisiana. The Louisiana statute, under the district court's reading, simply purports to address the process that is one's due when an external event—default—draws into question the continued retention of one's property right. In *Locke* and *Short*, the event bearing on the continued retention of a property interest had its genesis in the content of the legislative enactment, and the enactment of the substantive regulation afforded all the process that was due in those cases.

*Id.*

Even if this court were to believe that an individualized notice scheme would be a more sound, rational, or desirable scheme given the well registration information available to the EAA, the "efficacy of alternative routes" was for the Legislature to consider. *Locke*, 471 U.S. at 109, 105 S.Ct. 1785. Although we recognize that the deadline in this case, unlike the deadline in *Short* and *Locke*, was extended by subsequent events, we do not find this factual difference sufficient to conclude that the holdings in *Short* and *Locke* are not controlling in this case. The "grace period" or "deadline" imposed by the Act, "afford[ed] those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements

imposed and to comply with those requirements." *Locke*, 471 U.S. at 108, 105 S.Ct. 1785. Peavy Ranch was charged with knowledge of the initial March 1994 deadline through the enactment and publication of the Act. The subsequent extensions of that deadline could only work to Peavy Ranch's benefit. Peavy Ranch was not entitled to individualized notice before the deadline for filing the permit application could be applied to its property right. *Short*, 454 U.S. at 536–37, 102 S.Ct. 781. Accordingly, we hold that Peavy Ranch received all constitutionally required notice. EAA's second issue is sustained.

## Conclusion

The trial court's judgment is reversed, and judgment is rendered affirming the Final Order of the Edwards Aquifer Authority Adopting Administrative Law Judge's Proposal for Decision and Denying Application for Initial Regular Permit, dated August 10, 2004.

