In the Matter of TAX FORECLOSURE No. 35. CITY OF NEW YORK, Respondent; SAMSON WILSON, Appellant.

Second Department, April 13, 1987

## APPEARANCES OF COUNSEL

*John G. Hall (John J. Lawless* of counsel), for appellant.

*Peter L. Zimroth, Corporation Counsel (Leonard Koerner, Jeffrey Schanback* and *Angelo Aiosa* of counsel), for respondent.

## OPINION OF THE COURT

NIEHOFF, J. P.

On this appeal, we are called upon to determine the constitutionality of the Administrative Code of the City of New York former chapter 17, title D (now tit 11, ch 4), which does not provide for personal notice to a person having an interest in real property prior to an in rem tax foreclosure, unless such person has filed an owner registration card or an "in rem" card with the Commissioner of Finance of the City of New York (also called the Finance Administrator). The appellant's contention that the notice provisions of the Administrative Code have deprived him of his due process rights is bottomed on the holding of the United States Supreme Court in *Mennonite Bd. of Missions v Adams* (462 US 791).

In that case, the Supreme Court struck down Indiana's tax sale statute, which did not provide for any notice of the tax sale to mortgagees, other than by publication. The court declared that such notice, the sole notice provided to the Mennonite Board of Missions, a mortgagee of the subject premises, did not meet the requirements of the Due Process Clause of the 14th Amendment.

However, the *Mennonite* court did not address itself to the common type of notice provision in force in New York State, to wit, that a person with an interest in the property will

receive mailed notice of an in rem tax foreclosure, rather than merely notice by publication, if the interested party registers his or her name, address and a description of the property with a designated official (see, Administrative Code of City of New York former §§ D17-16.0, D17-17.0, now §§ 11-416, 11-417; Real Property Tax Law § 1126). The State of Indiana had no similar provision at the time of the sale in *Mennonite,* although it did adopt a similar provision prior to argument before the Supreme Court. Inasmuch as the amendment went into effect subsequent to the sale in question, the court specifically stated that "the constitutionality of [such a provision] is not before us" *(Mennonite Bd. of Missions v Adams, supra,* at 793, n 2).

■ Thus, we must now decide the question left open by the Supreme Court. We conclude, for the reasons set forth below, that the Administrative Code notice provisions did not deny the appellant due process.

### THE FACTS

On May 11, 1967, Samson Wilson, the appellant, acquired title to the premises designated on the tax map of the City of New York for the Borough of Richmond (as the tax map was on June 27, 1955), as section 23, block 5226, lots 71 and 92. He acquired the property subject to a preexisting mortgage held by the City of New York (hereinafter the city).

Wilson made the quarterly payments on the mortgage to the city until October 26, 1976, when the mortgage was finally satisfied. However, Wilson never paid the city any taxes on a portion of his property, lot 92, from 1967 through 1977.

On March 15, 1977, the city commenced *In Rem Tax Foreclosure No. 35* to foreclose the unpaid tax lien on Wilson's delinquent parcel. The notice of foreclosure was published six times in the City Record. Wilson defaulted, and a judgment of foreclosure was signed on April 24, 1978. On April 25, 1978, title vested in the city by a deed issued by the Commissioner of Finance of the City of New York.

On November 14, 1979, Wilson filed an application for a discretionary release of the city's interest. By letter dated December 10, 1981, Wilson was advised that the city's interest would be released if by February 8, 1982, Wilson paid $14,440.55, representing delinquent charges and interest, a penalty charge, and the amount of tax deficiency during the city's operation. A corrected letter, dated January 12, 1982,

advised Wilson that the full amount he owed the city was actually $40,217.86, which should be paid by March 15, 1982. By letter dated May 11, 1982, Wilson requested an explanation and breakdown of the revised figures. The city responded in a letter dated May 14, 1982, that an administrative error had been made in computing his initial delinquent charges, and this error was corrected in the second letter.

Wilson apparently took no further action over the next two years, until he sent a letter to the city on July 18, 1984. In response to this inquiry, by letter dated August 2, 1984, the city advised Wilson that a closing with the successful bidder for lot 92 had been scheduled for August 24, 1984. By order to show cause dated August 9, 1984, Wilson moved for an order temporarily enjoining the sale and closing on lot 92, vacating the default judgment, and permitting him to redeem lot 92. By order dated May 21, 1985, Special Term, *inter alia,* denied Wilson's application to vacate the default judgment.

Wilson appeals from that order. As mentioned earlier, on appeal he argues that he was deprived of his property without due process of law because the only notice given of the tax foreclosure proceeding was by publication, a procedure which, as applied to the facts in the *Mennonite* case *(supra),* was held to be inadequate.

### THE LAW

The United States Constitution declares that no person shall be deprived of property without due process of law (US Const, 14th Amend, § 1). Although the Supreme Court has not provided us with a precise definition as to that which constitutes due process, it has made it clear that one of its fundamental elements is reasonable notice of the opportunity to appear and be heard *(see, Mullane v Central Hanover Trust Co.,* 339 US 306).

Since real property tax sales are a frequently used method of collecting delinquent property taxes, it becomes the duty of the courts to determine whether the type of notice chosen by a particular municipality will pass constitutional muster. As already pointed out in *Mennonite (supra),* the United States Supreme Court has held that when a mortgagee's interest in real property is publicly recorded, constructive notice, by publication and posting, of a pending tax sale, is inadequate notice under the Due Process Clause. But *Mennonite* specifically left open the question of whether a statutory scheme

such as the one set forth in the Administrative Code of the City of New York is constitutional.

Administrative Code former § D17-16.0 (a) and (c) (now § 11-416 [a], [c]) provides that:

"The finance administrator shall maintain a file of owner's registration cards submitted by owners of real property. Each such owner's registration card shall be signed by the owner or a duly authorized representative and shall state the date on which it was filed, the owner's full name and post office address and a description of the premises by reference to the section, block, and lot numbers on the tax map * * *

"The finance administrator shall also mail notice of foreclosure and any other process required by this title to all owners who have filed owner's registration cards whenever the parcels as to which such cards were filed are included in a list of delinquent taxes filed pursuant to this title".

Administrative Code former § D17-17.0 (now § 11-417) provides a similar procedure for mailing notices of foreclosure to any other persons having an interest in the real property who submit "in rem cards".

In the case at bar, it appears that Wilson's attorney had filed an owner registration card for lot 71, but not for lot 92. Accordingly, when the city mailed notices of the commencement of this foreclosure action, Wilson's name did not appear on the mailing list.

It is readily apparent that Wilson would have been mailed a notice of this foreclosure action if only he had registered lot 92 pursuant to the requirements of the Administrative Code. Can it be said that the city deprived Wilson of his due process right to actual notice, when the city provided a mechanism for such notice, and Wilson failed to avail himself of it?

Divergent views have been expressed as to whether such a statutory scheme, which provides an interested party with an opportunity to request and thereby receive actual notice, sufficiently complies with the due process requirements for notice as set forth in *Mennonite Bd. of Missions v Adams* (462 US 791, 793, *supra).*

In *Matter of Foreclosure of Tax Liens by County of Erie (Manufacturers & Traders Trust Co.)* (103 AD2d 636), the Fourth Department reviewed a provision of the Erie County Tax Act which provided that a mortgagee might request that the Commissioner of Finance provide notice of an impending tax foreclosure. The mortgagee had failed to make such a

request, as a consequence of which the mortgagee was notified of the sale by publication only.

Relying on *Mennonite (supra),* the Fourth Department held that the Erie County Tax Act provided inadequate notice to satisfy due process requirements as enunciated by the Supreme Court. The court stated that "the State has the constitutional obligation to provide mortgagees notice before divesting them of their interest. That duty cannot be abrogated by requiring the mortgagee to request notice. The State has an obligation to all mortgagees, not merely those who request notice * * * This constitutional duty cannot be met by shifting the burden to the property owner" *(Matter of Foreclosure of Tax Liens by County of Erie [Manufacturers & Traders Trust Co.], supra,* at 639-640).

On the other hand, in *Homemakers Fin. Serv. v Jones* (US Dist Ct, SD Ind, Indianapolis Div, Sept. 4, 1984, Dillin, J.), when the United States District Court for the Southern District of Indiana evaluated the analogous provision of the Indiana Code (Ind Code Annot § 6-1.1-24-4.2), which, as noted earlier, was added to the Indiana Code Annotated after the sale in *Mennonite* and which the Supreme Court in *Mennonite* expressly declined to review *(see, Mennonite Bd. of Missions v Adams, supra,* at 793, n 2), it held that a statutory scheme to provide personal notice of tax sales to those mortgagees who request it is a reasonable approach to balance the interests of the State in efficiently collecting taxes with the interests of mortgagees who are entitled to notice of State action affecting their property interests.

The court noted that the State's interest in efficiently maintaining property tax records and collecting property taxes would be substantially burdened by requiring routine notice by mail or personal service of tax sales to all mortgagees. It also noted that requiring mortgagees to file a request for notification of a tax sale may constitute a minor inconvenience, but certainly is not a substantial burden on mortgagees.

We agree with the rationale set forth in the Indiana case.

No lengthy argument is necessary to establish the proposition that the State has a vital interest in collecting its revenues quickly and inexpensively. In *Leigh v Green* (193 US 79, 89), the Supreme Court wrote that "[i]n authorizing the proceedings to enforce the payment of the taxes upon lands sold to a purchaser at tax sale, the State is in exercise of its

sovereign power to raise revenue essential to carry on the affairs of state".

In *Mullane v Central Hanover Trust Co.* (339 US 306, 314-315, *supra*), which was relied upon heavily by the Supreme Court in *Mennonite Bd. of Missions v Adams (supra)*, the court stated that notice is constitutionally adequate when "the practicalities and peculiarities of the case * * * are reasonably met". Whether a particular method of notice is reasonable depends upon the outcome of the balancing test between the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment" *(Mullane v Central Hanover Trust Co., supra,* at 314).

The State, which has a crucial stake in collecting delinquent taxes through tax sales, also has a substantial interest in avoiding the costly and time-consuming burden of ascertaining the identity and location of any party with a legally protected interest by resorting to a title search for each delinquent parcel. The added costs and procedures entailed might well render tax foreclosures unprofitable, if not entirely unmanageable. If such foreclosures became too burdensome to conduct, it is quite possible that some municipalities would be utterly overwhelmed with delinquent parcels, which would in turn worsen revenue collection problems and produce hardships for those who are faithful in the payment of their taxes.

Against these important interests of the State, there must be weighed the interests possessed by those whose property rights will be adversely affected by a tax foreclosure sale. Certainly, those are interests of considerable significance which ought not to be cut off in a cavalier manner. But, does the Administrative Code deal frivolously or unfairly with such interests, or does it adopt a reasonable and balanced approach to the problem of protecting property interests while collecting much needed delinquent taxes?

In the case at bar, the drafters of the provisions of the Administrative Code of the City of New York have established a simple, efficient, and eminently fair method for an interested party to obtain personal notice of any direct attack upon his or her possessory or proprietary rights by means of the minor step of the filing of a card by the interested party. Unlike the statute construed in *Mennonite (supra)*, which provided no method for personal notice upon the party there affected, the Administrative Code provides a simple means for obtaining actual notice. We consider the distinction critical.

Manifestly, Wilson would have been mailed notice of this action if he had but registered lot 92 pursuant to the requirements of the Administrative Code and, so, he must assume the blame for not having received such notice. Our reading of the Supreme Court cases leads us to conclude that due process does not require the State to save a party from its own failure to act reasonably in protecting its own interests. In sum, we hold that applying a balancing of interests test, the Administrative Code provisions pertaining to notice are such as to satisfy the requirements of due process.

Since Wilson was entitled to receive only constructive notice of the foreclosure sale because, in effect, he chose to waive his right to personal notice, the sale was not void for lack of proper notice.

Having determined that Wilson cannot complain of the notice given to him prior to the tax foreclosure sale, we are also compelled to hold that his motion to vacate the default judgment, and to permit him to redeem lot 92 must be denied as untimely. Administrative Code former § D17-25.0 (now § 11-424) authorizes the release of the city's interest in property acquired by in rem tax foreclosure upon application of any party who had an interest in the property at the time of the city's acquisition. Such an application may be made at any time during the two-year period following the recording of the deed. If such an application is made during the first four months of the two-year period, the application must be granted once the Corporation Counsel approves the application as to form, timeliness and eligibility. For the balance of the two years, the application may be approved by the New York City Board of Estimate in the exercise of its discretion.

In the case at bar, the tax foreclosure deed conveying title to lot 92 to the city was delivered and recorded on April 25, 1978. On November 14, 1979, Wilson filed an application for a discretionary release of the city's interest in the property. As noted previously, in 1981 he was advised that his application was approved, and he was given until March 15, 1982 to pay the outstanding charges. However, Wilson failed to avail himself of this opportunity to redeem, and chose to take no action until more than two years later, to wit, August 1984, when the city advised him that a closing had been scheduled with the successful bidder for lot 92.

Administrative Code former § D17-12.0 (now § 11-412) creates the presumption that the tax foreclosure action and all

proceedings therein and prior thereto, from and including the assessment of all lands affected and all notices required by law, were regular and in accordance with all provisions of law relating thereto. This presumption becomes conclusive two years after the date of the recording of the deed and, in effect, operates as a two-year Statute of Limitations *(see, In Rem Tax Foreclosure Action No. 29 Borough of Manhattan,* 115 Misc 2d 663, 671).

Since the tax foreclosure deed for lot 92 was recorded on April 25, 1978, and Wilson's motion to vacate the default judgment and to permit him to redeem lot 92 was not made until August 9, 1984, Special Term properly concluded that the motion was untimely made.

While holding that Wilson's motion to vacate the default judgment was time barred, we reject the city's contention that a plenary action was the exclusive method available to Wilson for setting aside the tax deed which had been delivered and recorded. The city's argument in this regard is founded upon language found in Administrative Code former § D17-12.0 (c) (now § 11-412 [c]) and on the Court of Appeals holding in *Town of Somers v Covey* (2 NY2d 250, 258, *appeal dismissed and cert denied* 354 US 916).

Administrative Code former § D17-12.0 (c) (now § 11-412 [c]) provides, in relevant part, that "[n]o action to set aside such deed [a deed conveying title to the city in an in rem tax foreclosure action] may be maintained unless the action is commenced and a notice of pendency of the action is filed in the office of the proper county clerk prior to the time that the presumption becomes conclusive as aforesaid." In *Town of Somers v Covey (supra),* which involved an in rem tax foreclosure proceeding brought under Tax Law former article VII-A, title 3, the Court of Appeals wrote "that where the deed has been delivered and recorded, an attack on the sufficiency of the notice may be made *only in an action* under subdivision 7 of section 165-h of the Tax Law" *(Town of Somers v Covey, supra,* at 258; emphasis in original).

Nevertheless, we are not persuaded that the Administrative Code provision providing for the bringing of an action to set aside a tax deed establishes the exclusive remedy available to an aggrieved party. Rather, it appears to us that it merely limits the time within which an action may be brought to set aside the deed. As the court wrote in *Matter of RPL Realty Corp. v Commissioner of Fin. of City of N. Y.* (117 Misc 2d 321, 326):

"*Covey* does not convince this court that the State and local Legislatures intended the plenary action to be the exclusive remedy available to void a tax deed.

"The court has inherent power to grant relief from a judgment or order. This power does not derive from statute and is not dependent thereon (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.13). Therefore, the court would retain its power even were it to conclude, *arguendo,* that section D17-12.0 of the Administrative Code [which mentions an action to set aside a tax deed] does establish an exclusive remedy."

For the foregoing reasons, we affirm the order of Special Term denying Wilson's motion to vacate his default and to permit him to redeem.

KUNZEMAN, KOOPER and SULLIVAN, JJ., concur.

Ordered that the order of the Supreme Court, Richmond County, dated May 21, 1985, is affirmed, with costs.