*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CLIFFORD W. TAGABAN, | ) | |
| | ) | Supreme Court Nos. S-15014/15253 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 1PE-11-00056 CI |
| | ) | |
| CITY OF PELICAN, | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 7049 – September 18, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Petersburg, William B. Carey, Judge.

Appearances: Fred W. Triem, Petersburg, for Appellant. Vance A. Sanders and Margot Knuth, Law Office of Vance A. Sanders, LLC, Douglas, for Appellee. Aesha Pallesen, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

This appeal involves a claim by Clifford W. Tagaban that the City of Pelican foreclosed upon parcels of land against which he had a judicial lien without giving him proper notice. In 1998 Tagaban was awarded a judgment against the Kake Tribal Corporation, and the next year he recorded this judgment as a ten-year lien against

parcels of property the Corporation owned. Tagaban requested and received lien extensions from the superior court in 2008 and 2009, though he did not record the second lien extension until 2012. The City foreclosed upon the parcels in August 2010. Although the City's counsel notified Tagaban's counsel of the foreclosure via email in October 2010, eleven months before the redemption period ended, Tagaban filed suit to challenge the City's lack of formal foreclosure and redemption notice to him as well as the constitutionality of Alaska's foreclosure and redemption notice statutes.

The superior court granted summary judgment to the City on all issues and awarded attorney's fees to the City under both Alaska Rules of Civil Procedure 68 and 82. Because AS 29.45.330 only requires foreclosure notice to property owners and this statute meets constitutional due process requirements, Tagaban — as a lienholder and not a property owner — was not due foreclosure notice by the City. As a lienholder Tagaban could have requested pre-foreclosure notice under AS 29.45.350, but he did not. And because Tagaban did not record the second lien extension until after the redemption period ended, we affirm the superior court's conclusion that the City was not required to issue redemption notice to him under AS 29.45.440 because he was not a lienholder of record when notice of the expiration of the redemption period was due. We also affirm the superior court's award of Rule 68 attorney's fees but vacate its award of fees under Rule 82.

## II. FACTS AND PROCEEDINGS

### A. Facts

Tagaban served as a representative for a class that filed suit against the Kake Tribal Corporation.[1] The class, composed of Kake shareholders ("the Hanson-Tagaban class"), won a judgment against the Corporation in June 1998. In

---

[1] *See Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1323 (Alaska 1997).

July 1999 Tagaban's counsel recorded the judgment in the Sitka Recording District.[2] At that time, the Corporation owned certain property in the City of Pelican. The Corporation went into bankruptcy from 1999 to 2002[3] and sold property to the Ed Bahrt Management Company in 2008. The Hanson-Tagaban class attempted to execute its judgment against the Corporation in 2009. The superior court entered an order allowing execution in May 2009 but vacated that order in July. The Corporation still owes the Hanson-Tagaban class approximately $1.2 million.

Superior courts purported to extend Tagaban's lien twice. First, Superior Court Judge Michael A. Thompson extended it in 2008 for a period of three years, until June 2011. Tagaban promptly recorded this first extension. Second, when he vacated the execution order in July 2009, Superior Court Judge Trevor Stephens also ruled that "the running of the ten-year life of plaintiffs' judgment liens as defined in AS 09.30.010 is tolled during any period within which Kake Tribal Corporation's pending bankruptcy or Chapter 11 Reorganization Plan has impaired the plaintiffs' ability to execute on their judgment liens." Tagaban did not record this second lien extension until January 2012.

In May 2010 the City of Pelican published a foreclosure list demanding payment of delinquent property taxes. The foreclosure list included the parcels of land owned by the Ed Bahrt Management Company and subject to the Hanson-Tagaban class lien. Roughly $17,000 of the City's unpaid taxes were for real property taxes from 2008 and 2009 plus interest. The City asserted that greater amounts were also due for other alleged indebtedness, including delinquent personal property taxes and sales taxes,

---

[2]     A recorded judgment becomes a ten-year lien upon the debtor's real property located in the recording district. *See* AS 09.30.010.

[3]     The bankruptcy court recognized the Hanson-Tagaban class's claim as a $1,106,980.74 secured-judgment lien claim. The final decree closing the Corporation's bankruptcy case was entered in January 2004.

bringing the total due to roughly $31,000. In August 2010 the City filed a petition to foreclose its tax liens on the property.

After the court entered a judgment of foreclosure Tagaban's counsel, Fred Triem, inquired about the status of the property. The City's attorney informed Triem in an October 4, 2010 email that "Pelican's tax lien was for $31,175.51" and that "[t]he Foreclosure List was published in three prominent places in Pelican for thirty days beginning on May 14, 2010. It was properly served on the property owner, Edward Bahrt and Associates LLC." The email ended with "I hope this is what you needed."

In July 2011 the Pelican City Clerk issued a notice that the period of time within which the parcels could be redeemed would expire in September 2011. The City did not give direct notice of the expiration of the redemption period to the Hanson-Tagaban class or to Tagaban individually.

## B. Proceedings

Tagaban filed suit in March 2012 to challenge the City's foreclosure on the property in which he claimed an interest.[4] Tagaban challenged the City's lack of formal notice of foreclosure and expiration of the redemption period to him as a lienholder. He also challenged the constitutionality of Alaska's foreclosure and redemption notice

---

[4] Tagaban originally filed this case in his capacity as a representative of the class of Kake Tribal Corporation shareholders who had won a judgment against the Corporation. The original complaint was dismissed without prejudice; the superior court found that if the Hanson-Tagaban class was to be a party in the present case, it would have to be re-certified pursuant to Rule 23. The superior court explained that because the City of Pelican was not party to the previous cases against the Kake Tribal Corporation, it had "no chance to address the class certification" or "to challenge the judgment that was entered against [the Corporation]." The superior court noted that Tagaban "or other interested parties are free to bring a new action, individually or as a class." Tagaban then brought this case in his individual capacity, as a single member of the class of shareholders who hold a single judgment against the Kake Tribal Corporation. We do not now review the superior court's previous dismissal.

statutes on their face. In May 2012 the City made a Rule 68 offer of judgment to Tagaban for $3,250.[5] The City asserts that this sum would provide Tagaban "with his full share of the class judgment (25 shares at $98 per share) plus $150 for his filing fee and $500 for attorney's fees for the preparation of the Plaintiff's Third Amended Complaint," which was filed by Tagaban solely in his individual capacity. Tagaban rejected this offer.

In May 2012 Tagaban moved for summary judgment, and the City opposed and filed a cross-motion for summary judgment in June. The City challenged the validity of the lien extensions. Superior Court Judge William B. Carey denied Tagaban's motion and granted the City's motion for summary judgment, concluding that courts do not have the authority to extend judgment liens beyond the ten years allowed by statute. The superior court awarded attorney's fees to the City under both Rule 68 and Rule 82.

On appeal Tagaban raises fourteen claims that complain of the City's lack of notice to him of the foreclosure and expiration of the redemption period. He also challenges the constitutionality of Alaska's foreclosure and redemption notice statutes. Tagaban contends that the lien extensions were valid, asserting that he had an ongoing interest in the property so that the City should have provided foreclosure and redemption notice to him. Tagaban also challenges the City's foreclosure and redemption dollar value calculations and the superior court's award of attorney's fees.

## III.   STANDARDS OF REVIEW

We review the grant of summary judgment de novo.[6] In reviewing summary judgment, we read the record in the light most favorable to the non-moving

---

[5]     Alaska Rule of Civil Procedure 68(b) provides that litigants that reject offers of judgment that are less favorable than the final judgment rendered by the court may be required to pay a portion of the offeror's costs and attorney's fees.

[6]     *Farmer v. Alaska USA Title Agency, Inc.*, 336 P.3d 160, 162 (Alaska 2014).

party and take all reasonable inferences in its favor.[7] We will affirm a grant of summary judgment "if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[8] We apply our independent judgment to questions of law, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[9] "Whether a superior court applied the law correctly in awarding attorney's fees is a question of law that we review de novo. We apply the independent [de novo] standard of review in deciding whether a superior court correctly determined a settlement offer's compliance with Rule 68."[10]

## IV. DISCUSSION

Alaska Statute 29.45.330 requires municipalities to provide notice of foreclosure to property owners, and AS 29.45.440 requires municipalities to give lienholders notice at least 30 days before the redemption period expires for a foreclosed property subject to a lien. Tagaban's claims hinge on whether the City was constitutionally required to give foreclosure notice to him as a lienholder and whether he was a lienholder of record when the City provided notice of the expiration of the redemption period, as required by statute. We examine first Tagaban's pre-foreclosure and pre-redemption claims and then turn to his claims challenging the City's calculation of the redemption amount and the superior court's award of attorney's fees.

---

[7]    *See Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 296 (Alaska 2011).

[8]    *Id.* (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)).

[9]    *Shaffer v. Bellows*, 260 P.3d 1064, 1068 (Alaska 2011) (quoting *Smith v. Radecki*, 238 P.3d 111, 114 (Alaska 2010)).

[10]    *Beal v. McGuire*, 216 P.3d 1154, 1162 (Alaska 2009) (footnote omitted).

**A.     The City's Failure To Provide Written Foreclosure Notice To Tagaban Did Not Violate His Right to Due Process.**

Alaska Statute 29.45.330 requires that, before a municipality forecloses on a property, it publish that fact in a local newspaper or, if none is available, in a public place, and "mail to the last known *owner* of each property . . . a notice advising of the foreclosure proceeding."[11]  The statute does not require that similar notice be mailed to a lienholder of the property, but under AS 29.45.350 a lienholder can request that he receive the same notice if a municipality seeks to foreclose the property in which he has an interest.  Tagaban argues that AS 29.45.330 violates the due process clauses of the Alaska Constitution[12] and the United States Constitution,[13] which he asserts require written foreclosure notice to all lienholders of record in addition to property owners.

The superior court ruled that AS 29.45.330(a) did not violate Tagaban's due process rights.  The superior court based this conclusion on an evaluation of due process precedent,[14] which it interpreted to provide that only reasonably ascertainable interest-holders must receive foreclosure notice.  The superior court further concluded that Tagaban's interest was not reasonably ascertainable, and thus that he did not suffer

---

[11]     AS 29.45.330(a) (emphasis added).

[12]     The Due Process Clause of the Alaska Constitution reads: "No person shall be deprived of life, liberty, or property, without due process of law.  The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed." Alaska Const. art. I, § 7.

[13]     The Due Process Clause of the United States Constitution that applies to the states reads:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

[14]     *See generally Jones v. Flowers*, 547 U.S. 220 (2006); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

a due process violation. We conclude that even if Tagaban's interest was reasonably ascertainable, AS 29.45.330(a) does not violate due process interests by limiting its foreclosure notice requirement to property owners because AS 29.45.350, which allows mortgagees and lienholders to request foreclosure notice,[15] provides a reasonable mechanism by which interest-holders like Tagaban may protect their property rights.

"[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "[16] Assessing the constitutional adequacy of the notice requires us to balance the "interest of the State" against "the individual interest sought to be protected" by the Due Process Clause.[17]

The central case Tagaban relies on to challenge the constitutionality of AS 29.45.330(a) is *Mennonite Board of Missions v. Adams*.[18] In *Mennonite* the United States Supreme Court considered an Indiana law requiring that a municipality send a notice of a foreclosure sale to property owners, but not mortgagees or other lienholders.[19] The Court held that "[n]otice by mail or other means as certain to ensure actual notice

---

[15]    *See* AS 29.45.350 ("A holder of a mortgage or other lien on real property may request the clerk to send by certified mail notice of a foreclosure list that includes the real property.").

[16]    *Mennonite*, 462 U.S. at 795 (quoting *Mullane*, 339 U.S. at 314); *see also Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974) (adopting *Mullane*'s language for due process analysis under the Alaska Constitution).

[17]    *Mullane*, 339 U.S. at 314.

[18]    462 U.S. 791 (1983).

[19]    *Id.* at 793.

is a minimal constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable."[20] The Court ruled in favor of a mortgagee who had challenged the Indiana foreclosure notice law because it determined that he was identifiable from the publicly recorded mortgage.[21] Thus it concluded that the municipality's failure to mail notice of the foreclosure to the mortgagee's last known address violated due process.[22]

But as the City points out, at the time of the foreclosure in *Mennonite*, Indiana law did not provide a mechanism for mortgagees or other interest-holders beyond the property owner to request foreclosure notice by mail or personal service.[23] Indiana's foreclosure notice statutes were later amended to include a "request-notice" provision, which allows a mortgagee or lienholder who wishes to be notified of foreclosure proceedings to file a request with the clerk to be so notified.[24] Alaska has a similar request-notice provision at AS 29.45.350, which provides that "[a] holder of a mortgage or other lien on real property may request the clerk to send by certified mail notice of a foreclosure list that includes the real property." Because the events in *Mennonite* occurred before Indiana's request-notice statute was ratified, the Court

---

[20] *Id.* at 800 (emphasis in original).

[21] *Id.* at 798.

[22] *Id.* at 793, 800.

[23] *See id.* at 793 n.2 (acknowledging that Indiana had added a "request-notice" provision subsequent to the events in the case).

[24] *See* IND. CODE § 6-1.1-24-3(c) (2015) (providing for pre-foreclosure notice by certified mail to any mortgagee who has annually requested such notice).

specifically declined to rule on the constitutionality of request-notice provisions.[25] Thus, the Court did not consider whether a foreclosure notice statute like AS 29.45.330(a) violates the due process rights of a lienholder when viewed in conjunction with a request-notice provision like AS 29.45.350.

Since *Mennonite*, the Indiana Supreme Court and other state courts have held that request-notice statutes adequately protect the due process rights of individuals with non-ownership property interests, like mortgagees and lienholders.[26] These courts have persuasively reasoned that request-notice statutes strike an appropriate balance between a state's need to collect delinquent taxes in a manner that is not overly burdensome and an interested party's constitutional right to receive notice prior to a state action that will affect his property interest.[27] For example, the Indiana Supreme Court has twice held that request-notice statutes do not offend due process with respect to mortgagees because they "properly balance[]" the interests of the state and affected individuals.[28]

---

[25] *See Mennonite*, 462 U.S. at 793 n.2 ("Because the events in question in this case occurred before the 1980 amendment [that added the request-notice provision], the constitutionality of the amendment is not before us.").

[26] *See, e.g., M & M Inv. Grp., LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108, 1125 (Ind. 2013); *Elizondo v. Read*, 588 N.E.2d 501, 504 (Ind. 1992); *Barca v. Reed*, 635 So. 2d 771, 773 (La. App. 1994) (upholding Louisiana's request-notice statute because "the safeguards for affording due process are in place"); *In re Tax Foreclosure No. 35*, 514 N.Y.S.2d 390, 394 (N.Y. App. Div. 1987); *Grant Cnty. v. Guyer*, 672 P.2d 702, 707-08 (Or. 1983) (recognizing that foreclosure notice by mail to lienholders who request notice does not improperly deny lienholders due process).

[27] *See, e.g., M & M Inv. Grp.*, 994 N.E.2d at 1124; *Elizondo*, 588 N.E.2d at 504; *In re Tax Foreclosure No. 35*, 514 N.Y.S.2d at 393-94.

[28] *M & M Inv. Grp.*, 994 N.E.2d at 1115; *see also Elizondo*, 588 N.E.2d at 504
(continued...)

As for Tagaban's private interest, a lienholder "possesses a substantial property interest that is significantly affected by a tax sale."[29] But a lien interest does not carry the same weight or due process concerns as ownership.[30] A lien is merely a security for a debt and does not give a lienholder title to the land, which otherwise would impose a higher notice burden on the state.[31] The operative question here is whether Alaska's municipal foreclosure notice scheme, which requires lienholders to affirmatively request notice, is "reasonably calculated, under all circumstances, to apprise

---

[28](...continued) ("The interest-holder needed only to complete a simple form to insure notice. The fact that the interest-holder chose not to avail itself of this method of protecting its interest is not sufficient grounds to demand that the State be required to conduct a more burdensome, costly search. We cannot say that the auditor's failure to go outside the prescribed statutory bounds resulted in a constitutional deprivation of due process.").

[29] *Mennonite*, 462 U.S. at 798. Though *Mennonite* specifically considered mortgages, under the Indiana law at issue "a mortgagee acquires a lien on the owner's property," *id.*, and thus the Court's analysis — as well as the analysis in *M & M Investment Group* and *Elizondo* — encompasses lienholder interests. Alaska follows a similar approach to mortgage interests. *See Young v. Embley*, 143 P.3d 936, 941 (Alaska 2006) ("[W]e believe that the territorial view that mortgages in Alaska convey to the mortgagee only a lien, not any sort of title, should be retained.") (quoting *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831 (Alaska 1970)).

[30] *See M & M Inv. Grp.*, 994 N.E.2d at 1119 (noting that while a lienholder is entitled to reasonable notice, "this does not, however, necessarily compel the conclusion that in our weighing of the State's interest and the private interest, a [lienholder's] interest will tip the scale to the same degree as a property owner's and thus impose the same burden on the State. Put simply, a [lienholder] is not a property owner.").

[31] *See Jones v. Flowers*, 547 U.S. 220, 230 (2006) (examining the higher due process notice requirements owed by the government when foreclosure "concerns such an important and irreversible prospect as the loss of a house").

-11- **7049**

[lienholders] of the pendency of the action and afford them an opportunity to present their objections."[32]

The Indiana Supreme Court characterized request-notice provisions as procedures that "protect[] the State's interest in receiving taxes while relieving it of the sometimes tremendous administrative burden of checking all public records to ascertain whether any [liens] have been taken on the property, whether these [liens] are viable, and whether the address on the [lien] is dependable."[33]  On balance, this state interest outweighs a private lienholder's interest in having the government search high and low to identify him, particularly when a lienholder can protect his interest by filing a simple form with the clerk's office that assures that foreclosure notice will be provided.[34]

---

[32]     *Mennonite*, 462 U.S. at 795 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[33]     *M & M Inv. Grp.*, 994 N.E.2d at 1119 (quoting *Elizondo*, 588 N.E.2d at 503-04) (alteration in original); *see also id.* at 1122 ("[W]e believe even the expensive and time-consuming title search through a recorder's office cannot reasonably be conceived of as leading to the actual name and address of the actual mortgagee with an interest in the property — not in today's era of mortgage-backed securities and trading. In fact, the more likely result for these cases on the whole would be a *lower* accuracy rate than the method currently in place — a factor we must weigh significantly in our analysis." (citing *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976)) (emphasis in original)).

[34]     *Cf.* Ellen F. Friedman, Note, *The Constitutionality of Request Notice Provisions in In Rem Tax Foreclosures*, 56 FORDHAM L. REV. 1209, 1232 (1988) ("Although individuals have a constitutional right to receive notice of proceedings that will affect their interests in property, the Supreme Court's modern due process jurisprudence emphasizes reasonableness, flexibility and a balancing of interests under the totality of the circumstances.  Given the gravity of the state's interest in real property taxation, request notice provisions strike a reasonable balance between the individual's constitutional right to receive notice of an impending tax sale and the state's need to collect delinquent property taxes inexpensively and expeditiously.").

"[T]his is hardly an onerous burden in light of the benefit obtained; and is far less onerous than the burdens the alternative would place on the State in exchange for a far lower degree of benefit."[35] The New York Supreme Court, Appellate Division, adopted this analysis and upheld New York's request-notice statute on similar balancing grounds in *In re Tax Foreclosure No. 35*.[36]

Other courts have taken the position that request-notice statutes do not comport with due process requirements because they improperly relieve the state of its obligation to give notice to "reasonably ascertainable" interested parties.[37] The United States Court of Appeals for the Fifth Circuit has held that "[a] party with an interest in property does not waive its due process rights by failing to request notice under [a state

---

[35]    *M & M Inv. Grp.*, 994 N.E.2d at 1124; *see also In re Tax Foreclosure No. 35*, 514 N.Y.S.2d 390, 393 (N.Y. App. Div. 1987) ("The State, which has a crucial stake in collecting delinquent taxes through tax sales, also has a substantial interest in avoiding the costly and time-consuming burden of ascertaining the identity and location of any party with a legally protected interest by resorting to a title search for each delinquent parcel. The added costs and procedures entailed might well render tax foreclosures unprofitable, if not entirely unmanageable. If such foreclosures became too burdensome to conduct, it is quite possible that some municipalities would be utterly overwhelmed with delinquent parcels, which would in turn worsen revenue collection problems and produce hardships for those who are faithful in the payment of their taxes.").

[36]    *See* 514 N.Y.S.2d at 394 ("Unlike the statute construed in *Mennonite, supra*, which provided no method for personal notice upon the party there affected, the Administrative Code provides a simple means for obtaining actual notice. We consider the distinction critical.").

[37]    *See, e.g., Davis Oil Co. v. Mills*, 873 F.2d 774, 788 (5th Cir. 1989); *Wylie v. Patton*, 720 P.2d 649, 653-54 (Idaho App. 1986); *Town of Phillipsburg v. Block 22 Lots 14, 15, 16*, 528 A.2d 98, 100-01 (N.J. Super. Ct. Ch. Div. 1987); *In re Foreclosure of Tax Liens by Erie Cnty.*, 481 N.Y.S.2d 547, 550 (N.Y. App. Div. 1984); *Seattle-First Nat'l Bank v. Umatilla Cnty.*, 713 P.2d 33, 35-36 (Or. App. 1986).

request-notice] statute. Accordingly, a creditor retains the duty to provide notice to interested parties whose identity is reasonably ascertainable."[38]

But the Fifth Circuit's precedent[39] relies on the United States Supreme Court's statement in *Mennonite* that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."[40] And that statement in *Mennonite* was dicta referencing sophisticated interest-holders who "have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated," and thus, the municipality argued, were not particularly prejudiced by not receiving explicit notice of the foreclosure.[41] The Court suggested that such means are not available to the average interest-holder, which supported its reasoning that the potential to predict a foreclosure through private investigative efforts should not influence a state's obligation to give foreclosure notice.[42]

---

[38] *Sterling v. Block*, 953 F.2d 198, 200 (5th Cir. 1992) (citation omitted) (citing *Davis Oil Co.*, 873 F.2d at 788).

[39] *See Davis Oil Co.*, 873 F.2d at 788-90 (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983)).

[40] *Mennonite*, 462 U.S. at 799.

[41] *Id.*

[42] *See id.* at 799-800; *see also M & M Inv. Grp., LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108, 1120 (Ind. 2013) (recognizing that the Court's statement in *Mennonite* regarding a party's ability "was not, in fact, a wholesale repudiation of any and all [request-notice] statutory obligations . . . [but that] the statement refers to the relative sophistication of a party"); *Seattle-First Nat'l Bank*, 713 P.2d at 38 (Young, J., dissenting) ("I do not take the quoted statement to mean that the state cannot require or seek assistance to meet its constitutional burden. *Mennonite* instead means that the adequacy of whatever step the state has taken to provide constitutionally adequate notice is the relevant inquiry. The state has taken the step of enacting [a request-notice

(continued...)

-14-                                                                7049

*Mennonite* did not address a lienholder's "ability to take steps to safeguard its interests" through a simple statutory mechanism that allows the lienholder to request explicit, government-initiated notice without expending any particular means other than filing a form with the clerk's office.[43]  Moreover, the United States Supreme Court's decisions addressing notice in this context have "never disregarded a party's ability to take steps to protect itself.  Rather, the Court has considered the interest-holder's ability to take reasonable steps to protect his interest as a crucial aspect of the balancing test."[44]

We thus conclude that the foreclosure notice provision of AS 29.45.330(a) does not violate a lienholder's due process interests because a lienholder who wishes to obtain foreclosure notice can request it under AS 29.45.350.  This statutory structure

---

[42](...continued)
statute]." (footnote omitted)).

[43]        *See Mennonite*, 462 U.S. at 793 n.2.

[44]        *Elizondo v. Read*, 588 N.E.2d 501, 504 (Ind. 1992); *see Mennonite*, 462 U.S. at 807 (O'Connor, J., dissenting) ("When we have found constructive notice to be inadequate, it has always been where an owner of property is, for all purposes, *unable* to protect his interest because there is no practical way for him to learn of state action that threatens to affect his property interest.  In each case, the adverse action was one that was completely unexpected by the owner, and the owner would become aware of the action only by the fortuitous occasion of reading 'an advertisement in small type inserted in the back pages of a newspaper . . . . [that may] not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention.' " (alteration, omission, and emphasis in original) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950))); *Seattle-First Nat'l Bank*, 713 P.2d at 38 (Young, J., dissenting) ("I do not believe that the majority in *Mennonite* rejected the principle stated in [Justice O'Connor's] dissent. On the contrary, I believe that the majority meant that, because publication was the sole authorized means of notice under the relevant statute, there was no practicable way for an Indiana mortgagee to receive actual knowledge of a pending tax foreclosure. On the other hand, [Oregon's request-notice statute] does provide a practical, simple and systematic means for a recorded lienholder to acquire *actual* notice." (emphasis in original)).

reasonably balances a lienholder's interest in preserving the ability to enforce a property interest against a governmental entity's interest in efficiently collecting delinquent taxes.

**B.     Because Tagaban Had Actual Notice Of The City's Foreclosure Before The End Of The Redemption Period, His Due Process Challenge To The Redemption Notice Statute Must Fail.**

Alaska Statute 29.45.440(a) requires municipalities to send notice of the expiration of a redemption period at least 30 days before it ends "by certified mail to each record owner of property against which a judgment of foreclosure has been taken and, if the assessed value of the property is more than $10,000, to all holders of mortgages or other liens of record on the property." Though Tagaban was not mailed a notice of the expiration of the redemption period, Tagaban did have actual notice regarding the redemption period and thus cannot now challenge Alaska's redemption notice statute.

Tagaban's attorney communicated with the City's attorney via email in October 2010 about the foreclosed property. Tagaban's attorney asked about the status of the property, and the City's attorney's reply specified the tax lien amount and noted that "[t]he Foreclosure List was published in three prominent places in Pelican for thirty days beginning on May 14, 2010" and that "[i]t was properly served on the property owner, Edward Bahrt and Associates LLC." Under AS 29.45.400 "[p]roperties transferred to the municipality are held by the municipality for at least one year. During the redemption period a party having an interest in the property may redeem it by paying the lien amount plus penalties, interest, and costs . . . ." Tagaban thus received actual notice of the redemption period because he was informed in October 2010 that the foreclosure list had been published in May 2010, which meant that the foreclosure occurred sometime after that date. Because the redemption period runs for one year, when Tagaban received actual notice of the foreclosure the property was still well within

the redemption period, which did not expire until September 2011. Because Tagaban had actual knowledge of the foreclosure during the redemption period and did not seek to redeem the property, he cannot now raise a due process challenge to the redemption notice statute.

    **C.**     **Tagaban Is Prohibited From Challenging The Foreclosure And Redemption Dollar Amounts Because He Failed To Challenge Them During The Redemption Period.**

Tagaban raises two claims related to the foreclosure and redemption dollar amounts. First, Tagaban asserts that "[t]he in rem foreclosure process of AS 29.45 can be used only to enforce a local government's claim for unpaid real estate taxes and not for any other claims," and argues that the City thus violated the statute by using the foreclosure process to enforce non-property-tax claims.[45] Second, Tagaban argues that foreclosure of a one million dollar property on which roughly $17,000 in unpaid real property taxes are due amounts to a due process violation. The City does not directly rebut these claims. However, we need not reach these issues because Tagaban did not challenge the foreclosure or redemption amounts during the redemption period, which by law followed the foreclosure of which he had actual notice.[46] Under AS 29.45.450, unredeemed property is "deeded to the borough by the clerk of the court" and "gives the

---

[45]     Tagaban asserts that the City "artificially inflated the amount of the redemption from less than $17K (the unpaid real property taxes and interest) to successively higher amounts: to $31K and later to $88K by adding charges for claims that are not enforceable through the municipal tax foreclosure process established in AS 29.45 (e.g., for 'freight, payroll, repairs . . . trash, sewer, misc.')."

[46]     *See* AS 29.45.400 ("Properties transferred to the municipality are held by the municipality for at least one year. During the redemption period a party having an interest in the property may redeem it by paying the lien amount plus penalties, interest, and costs.").

municipality clear title."[47]   Because Tagaban did not challenge the foreclosure and redemption amounts during the redemption period, he cannot now challenge those values.

**D.   It Was Error To Award Attorney's Fees Under Both Rule 68 And Rule 82, But The Award Of Fees Under Rule 68 Was Valid.**

Finally Tagaban challenges the superior court's attorney's fee awards. The superior court made two awards of attorney's fees: one based on Rule 68(b)(1)[48] against Tagaban in his individual capacity and the other based on Rule 82(b)(2)[49] against Tagaban in his capacity as a representative in a class action suit.[50]   Tagaban challenges the fact that the superior court made two fee awards, its assessment of attorney's fees against a representative in a class action suit, and its award of any attorney's fees whatsoever. The City seeks to defend both fee awards.

---

[47]   *See also* AS 29.45.440(a) (noting that "every right or interest of a person in the properties will be forfeited forever to the municipality" upon expiration of the redemption period).

[48]   "[I]f the [rejected offer of judgment] was served no later than 60 days after the date established in the pretrial order for initial disclosures required by Civil Rule 26, the offeree shall pay 75 percent of the offeror's reasonable actual attorney's fees" incurred after the date of the offer. Alaska R. Civ. P. 68(b)(1).

[49]   "In cases in which the prevailing party recovers no money judgment, the court . . . shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk." Alaska R. Civ. P. 82(b)(2).

[50]   Tagaban initially filed this suit as a representative of the Hanson-Tagaban class, then after the first filing was dismissed without prejudice he later re-filed his claim solely in his individual capacity.

### 1. Rule 68 and Rule 82 fees in litigation related to the same case

Tagaban claims that the superior court erred in making two awards of attorney's fees against him. Alaska Statute 09.30.065 prohibits the award of fees under both Rule 68 and Rule 82,[51] which the superior court did here. The City responds that the statute prohibits the award of fees under both Rule 68 and Rule 82 "only to the extent that the request for fees is being made in the same suit involving the same parties." It suggests that assessing fees against Tagaban under both Rule 68 and Rule 82 is appropriate here because Tagaban's successive filings — first as a purported representative of the Hanson-Tagaban class, and second in his personal capacity — were not part of the same case.

We addressed this argument in *Beal v. McGuire*, in which we rejected the defendants' argument in support of awards under both Rule 68 and Rule 82 because the defendants did not establish that the filings at issue "were two different cases."[52] Similarly, the City's argument to support both awards here hinges on whether Tagaban's successive filings were part of the same suit. The City notes that Tagaban's initial case was dismissed without prejudice, and that Tagaban later "refile[d] *the lawsuit* in his

---

[51]     AS 09.30.065(b) ("A party who receives attorney fees under this section may not also receive attorney fees under the Alaska Rules of Civil Procedure."); *see also Beal v. McGuire*, 216 P.3d 1154, 1177 (Alaska 2009) ("A party may not receive awards under both Rule 68 and Rule 82 even if those awards correspond to different time periods within the same case.").

[52]     216 P.3d 1154, 1177 n.73 (Alaska 2009) ("The defendants argue that the Rule 68 and Rule 82 fees awards correspond to entirely separate actions, because the plaintiffs changed counsel, amended their complaint, and engaged in more extensive discovery once [a preliminary issue] had been resolved. These circumstances do not establish that there were two different cases. Nor are awards under both rules necessary to hold plaintiffs responsible for their vexatious conduct . . . ." (internal quotation marks omitted)).

individual capacity."[53]  (Emphasis added.)  Thus the City's own terminology seems to recognize that the successive filings were related to the same suit.

Moreover, the difference in potential relief for the two filings at issue is only a matter of scale, not a difference in the character of the legal issues presented. Though the second filing in Tagaban's individual capacity, rather than as a class representative, narrows the scope of plaintiffs involved, it advances nearly identical legal claims.  This precludes dual awards of attorney's fees under both Rule 68 and Rule 82. Ruling otherwise would put form over function.

### 2. Rule 82 attorney's fees for litigation related solely to class action procedural matters

Tagaban also argues that attorney's fees cannot be assessed against a representative in a class action suit because doing so "offends public policy," among other arguments.[54]  The City responds that it is only seeking a Rule 68 award against Tagaban "for the litigation he maintained in his individual capacity," but other parts of the City's brief seem to justify its request for Rule 82 attorney's fees incurred while defending itself against Tagaban's initial filing as a representative of the purported Hanson-Tagaban class — that is, fees incurred prior to the dismissal without prejudice. Indeed, the superior court's award of Rule 82 attorney's fees was against "the Hanson-Tagaban class plaintiffs, jointly and severally."

---

[53]     The City also notes that "[t]*his case* started off as a purported class action lawsuit . . . ," (emphasis added) suggesting that the matter before us now (relating to Tagaban's claims in his individual capacity) is part of the "same case" that was initially filed by Tagaban as part of a purported class action.

[54]     Though Tagaban's brief discusses this issue in terms of Rule 68, not Rule 82, the question regarding this issue in his list of "Issues Presented For Review" is phrased in terms of "attorney's fees" more broadly.

We have previously considered whether Rule 82 fees can be assessed against a representative of a class action lawsuit in *Weimer v. Continental Car & Truck, LLC*[55] and *Monzingo v. Alaska Air Group, Inc.*[56] We have drawn a "distinction between fees incurred in litigating the merits of the named plaintiff's own claim and those incurred in litigating class certification issues," holding that Rule 82 fees are only appropriate for the former.[57] Accordingly, Rule 82(b) fees should not have been awarded for the time the City spent litigating Tagaban's "standing to sue as a class representative."[58] Here, the superior court granted the City's motion to dismiss Tagaban's initial filing as a representative of the Hanson-Tagaban class based solely on the superior court's consideration of "who, if anyone, is the proper party to bring an action against the City of Pelican for alleged misconduct." The superior court explicitly noted that "the merits of this case have little or no role in this order," and later noted that "[t]he [dismissal] order did not address the merits of the case." Because the first part of this litigation (involving the Hanson-Tagaban class, rather than only Tagaban in his individual capacity) concluded without considering the substantive merits of the case,

---

[55] 237 P.3d 610 (Alaska 2010).

[56] 112 P.3d 655 (Alaska 2005).

[57] *Weimer*, 237 P.3d at 618; *see also id.* ("The distinction lies in the plaintiff's financial incentive to serve as class representative — a plaintiff has a financial incentive to pursue his or her own claim, but is unlikely to risk a greater adverse attorney's fees award arising from class certification issues involved in litigating others' claims." (citing *Monzingo*, 112 P.3d at 667)); *Monzingo*, 112 P.3d at 664-65 ("We are . . . persuaded by [the class representatives'] argument that a future class representative seeking a small amount of relief will be dissuaded from becoming a named plaintiff in a class action suit if he risks high attorney's fees for litigation that goes beyond that required to adjudicate the merits of his own case.").

[58] *Albrecht v. Alaska Tr., LLC*, 286 P.3d 1059, 1065 (Alaska 2012).

it was improper for the superior court to award Rule 82 attorney's fees against Tagaban in his capacity as a purported representative of the Hanson-Tagaban class. We thus vacate the superior court's award of Rule 82 attorney's fees in this regard.

### 3.    Rule 68 attorney's fees

However, we affirm the superior court's grant of Rule 68 fees to the City because the City prevailed against Tagaban in his individual capacity — not in his capacity as class representative — on summary judgment.

Tagaban argues that Rule 68 fees are inapplicable in this case because his principal claims sought equitable relief. Tagaban's complaint did, however, seek monetary damages "for the harm caused to plaintiff by [the City] when it slandered and impaired the plaintiff's judicial lien on the property" and damages "for loss of reputation to [Tagaban's] judicial lien in an amount to be determined by judicial proceedings." Moreover, the City's offer of judgment roughly approximated Tagaban's pro rata share of the Hanson-Tagaban class judgment. Although we held in *Gold Country Estates Preservation Group, Inc. v. Fairbanks North Star Borough* that where a claim for equitable relief is not accompanied by a claim for monetary damages "[a] Rule 68 offer of judgment serves no legitimate purpose,"[59] in *Gold Country*, there was no way to approximate the monetary value of the equitable relief petitioners sought.[60]

In contrast, Tagaban's equitable claims were ultimately in service of allowing the Hanson-Tagaban class to execute its 1998 judgment. The requested declaratory relief would merely have served as step one of a two-step process, which, if it had been successful, would have awarded Tagaban his pro rata share of the 1998 judgment. Thus the only tangible benefit of this litigation recoverable by Tagaban was

---

[59]    270 P.3d 787, 799 (Alaska 2012).

[60]    *See id.* (seeking declaratory relief under the Open Meetings Act).

precisely what the City offered under Rule 68.  We therefore affirm the superior court's Rule 68 attorney's fee award.

## V.     CONCLUSION

We AFFIRM the judgment with respect to the foreclosure and redemption notice issues because the City was not constitutionally required to provide Tagaban with personal notice of the foreclosure and because Tagaban did not timely record his second purported lien extension sufficient to warrant redemption notice.  We also AFFIRM the superior court's award of Rule 68 attorney's fees, but VACATE its award of fees under Rule 82.